ROBERT LOWE, Plaintiff-Appellant, v. ROCKFORD NEWSPAPER, INC., *et al.*, Defendants-Appellees.

Second District  No. 2—88—0201

Opinion filed February 2, 1989.

Peter T. Sullivan III, of Sreenan, Cain & Sullivan, P.C., of Rockford, for appellant.

Thomas D. Luchetti, of Rockford, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Robert Lowe, appeals from the dismissal of his complaint which alleged that he was defamed by defendants, Rockford Newspaper, Inc., and Betsy Burkhard. On appeal, plaintiff contends that the trial court erroneously dismissed his complaint because (1) defendants' allegedly defamatory statements were not capable of being innocently construed and (2) defendants' conduct was not privileged under the doctrine of fair report of public proceedings. We reverse.

On October 29, 1986, Rockford Newspaper published the following article written by Betsy Burkhard:

> **"Would-be repo man**
> **draws blank**
> ***
>
> A Rockford couple's car was nearly stolen at knifepoint by someone who said he was a local repo man.
>
> Willie St. Junior, 39, and his wife, Joyce, 30, told Rockford police that they were walking to their car in a parking lot at 3485 Brick Drive shortly before 4 p.m. Tuesday when they saw two people who appeared to be trying to steal the car.
>
> When the St. Juniors approached, they told police a man

threatened them with a razor. Then, a woman who was with him got into the car.

The man told St. Junior that he was the repossession man for a local auto sales company.

He said he was either going to repossess the car or slash the tires so the car would have to be towed away.

Police arrived and arrested Robert L. Lowe, 19, 1116 16th St., and charged him with aggravated battery.

The woman who was with him was not charged.

Police said they found a razor on the front seat of the car and a wooden club.

The St. Juniors said the weapons belonged to the people who were apparently trying to steal the car.

Lowe told police that he worked for an auto dealership on Broadway and for the Rockford Park District.

He is free on bond."

Burkhard based her article on a police report which, in the relevant part, stated:

"Willie St. Junior stated that at about the described time, while exiting the above location, he noticed Lowe and Pinkston attempting to take his car. While he approached Lowe, Lowe was said to have drawn a razor knife and threatened him and his wife Joyce.

Willie St. Junior also stated that while he and his wife were being confronted by Lowe, Pinston [sic] was said to have got [sic] into and driven away in St. Junior's car.

Lowe stated that he was repossessing St. Junior's car and stated that he was going to slash the tires on St. Junior's car so it would have to be towed. He also stated that he is employed at Broadway auto sales as a repossessor.

Police then searched the suspect vehicle where a razor knife was found within arms [sic] reach in the center console and a wooden club was located on the rear passenger side floor area with the handle upward and within arms [sic] reach of the drivers [sic] side."

On October 28, 1987, plaintiff filed a complaint alleging that defendants' article falsely implied that he was a thief; falsely stated that he nearly stole a car; falsely stated that he was trying to steal a car; falsely stated that he threatened Mr. and Mrs. St. Junior with a razor; and falsely stated that he had been charged with a felony, namely, aggravated battery. Defendants filed a motion to dismiss the complaint which asserted that the article was capable of being inno-

cently construed and, therefore, not actionable as a matter of law. Defendants' motion further asserted that their article was a fair abridgment of an official record, namely, a police report, and therefore subject to a qualified privilege as a matter of law.

On January 14, 1988, the trial court conducted a hearing on defendants' motion to dismiss. In granting defendants' motion, the trial court found that the article was a fair report of information taken from a public record. When asked whether it was granting defendants' motion solely on the basis of the fair report privilege, the trial court responded that it was granting defendants' motion on every basis pleaded. On February 3, 1988, a written copy of the trial court's order was filed, and from that order, plaintiff has filed a timely notice of appeal.

This appeal raises the following two issues: (1) whether defendants' article, considered in context, may reasonably be interpreted as imputing that plaintiff committed or attempted to commit a theft; and (2) whether defendants' article was privileged because it was a fair and accurate abridgement of the contents of a police report.

■ For language to be actionable *per se*, it must be so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary. (*Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402, 414; *Owen v. Carr* (1986), 113 Ill. 2d 273, 277.) Under the common law of this State, four categories of words constitute libel *per se*: (1) those which impute the commission of a criminal offense; (2) those which impute infection with a loathsome communicable disease that would tend to cause a person to be excluded from society; (3) those which impute the inability to perform or want of integrity in the discharge of duties of office or employment; and (4) those which prejudice a particular party in his profession or trade. (*Costello*, 125 Ill. 2d at 414; *Owen*, 113 Ill. 2d at 277.) Words imputing the commission of a crime are libelous *per se* when the offense is indictable, involves moral turpitude, and is punishable by death or imprisonment rather than by fine. (*Owens v. CBS, Inc.* (1988), 173 Ill. App. 3d 977, 990.) Generally, words charging the commission of a crime need not meet the same technical requirements which are necessary for an indictment, and words fairly imputing a crime are sufficient. *Brown v. Farkas* (1986), 158 Ill. App. 3d 772, 778.

Before a statement is judged defamatory as a matter of law, it must first be decided whether the words are susceptible to an innocent construction. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352.) In *Chapski*, our supreme court stated:

"[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.* This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff." *Chapski,* 92 Ill. 2d at 352.

Plaintiff contends that defendants' article was not capable of a reasonably innocent interpretation because it stated or, at least, implied that he was stealing a car. Specifically, plaintiff draws our attention to the phrases "would-be repo man," "nearly stolen," "two people who appeared to be trying to steal the car," "someone who said he was a local repo man," and "people who were apparently trying to steal the car." According to plaintiff, those phrases clearly imply he was attempting to steal a car or was a car thief. Defendants contend that by using the words "nearly," "appeared," and "apparently," a reader of ordinary intelligence and understanding would not conclude that plaintiff was either a thief or charged with theft of a car. Defendants further assert that the use of the phrase "would-be repo man" is an accurate description of plaintiff's status.

■ From our review of the article, we find that plaintiff is depicted as a car thief using the guise of an automobile repossessor to accomplish his deeds. In our opinion, the article is not susceptible to a reasonably innocent construction. Instead of using the verbs "to take" or "to repossess," defendants chose the verb "to steal." It takes no great leap of logic to conclude that one who steals is a thief. Defendants also failed to qualify the statements in the article by using the word "allegedly" as opposed to the words "apparently," "nearly," and "appeared." Use of the term "allegedly" would have tempered defendants' article such that a reader would be alerted that the author's statements were unproved assertions and not proved facts.

Furthermore, by using the phrases "would-be repo man" and "someone who said he was a local repo man," defendants cast doubt on whether plaintiff's occupation as an automobile repossessor was legitimate. These statements, taken within the context of the entire article, clearly implied that plaintiff was something other than a legitimate automobile repossessor, namely, a car thief. Therefore, considering the statements in context and giving the words their natural and

obvious meanings and implications therefrom, we conclude that defendants' article is not reasonably capable of being innocently construed.

Having decided that defendants' article was not capable of a reasonably innocent interpretation, we now address whether the article was privileged under the doctrine of fair report of public proceedings. Plaintiff asserts that defendants' article failed to fall under the fair report privilege for three reasons: first, the fair report privilege does not extend to police reports; second, the fair report privilege does not extend to the details of his arrest; and third, defendants' article was not a fair and accurate summary of the police report.

■ Under the Illinois common law privilege of fair and accurate report of public records, a news entity can restate defamatory statements made about the plaintiff by another person in the context of public records or proceedings. (*Berkos v. National Broadcasting Co.* (1987), 161 Ill. App. 3d 476, 491; see also *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 167-68.) For the privilege to apply, the news entity must summarize the defamatory matter in a manner which is fair and accurate. (*Berkos*, 161 Ill. App. 3d at 491-92.) Hence, to properly invoke the privilege, "it is a necessary predicate that the media's defamatory statement about the plaintiff be found in the public record or proceeding to which the privilege is sought to be attached; if the defamatory matter does not appear in those public records or proceedings, the privilege of fair and accurate report of public records does not apply to the media's defamatory statements about the plaintiff." *Berkos*, 161 Ill. App. 3d at 492.

■ In the case at bar, defendants have failed to properly invoke the fair report privilege. A careful reading of the police report describing the events which led to plaintiff's arrest shows that defendants' article was not a fair and accurate abridgement of that report. The police report made no references to the word "steal" in detailing plaintiff's arrest. More importantly, defendants' article stated that the St. Juniors told police that "they saw two people who appeared to be trying to steal the car," and "the weapons belong to the people who were apparently trying to steal the car." It is clear that these statements were not contained in the police report. Because most of the statements which plaintiff claimed were defamatory did not appear in the police report of plaintiff's arrest, we conclude that the fair report privilege does not apply to defendants' allegedly defamatory statements about plaintiff. In determining that defendants have improperly invoked the fair report privilege, we need not address the other appellate issues raised by plaintiff. Accordingly, the trial court's decision

which dismissed plaintiff's complaint is reversed, and the cause is remanded for further proceedings.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

UNVERZAGT, P.J., and DUNN, J. concur.