GEORGE W. MAY, Plaintiff-Appellant, v. JOHN J. MYERS, Roman Catholic Bishop of Peoria, *et al.*, Defendants-Appellees.

Third District   No. 3—93—0386

Opinion filed December 30, 1993.

George W. May, of Peoria, appellant *pro se.*

Karen L. Kendall and Brad A. Elward, both of Heyl, Royster, Voelker & Allen, of Peoria (Timothy L. Bertschy, of counsel), for appellees.

JUSTICE LYTTON delivered the opinion of the court:

In this case, plaintiff appeals the trial court's dismissal of his complaint for defamation. We affirm.

Plaintiff, George May, was a priest serving defendant Roman Catholic Diocese of Peoria at St. Anthony Parish, Hoopeston, between March 24, 1976, and May 5, 1982. Plaintiff was removed from the parish in May 1982 by then-Bishop O'Rourke because of the "extreme animosity" between him and members of the Layden family over the Layden Fund (Fund).

The Fund was created by the will of Tade Layden, who left 160 acres to "his son and daughter for the perpetual use and benefit of the catholic church in Hoopeston." According to plaintiff, the parish was never notified of this interest. Plaintiff became aware of the Fund in 1978 and notified O'Rourke.

A lawsuit was filed in the Vermilion County circuit court to determine the ownership of the 160-acre parcel and the $160,000 profits derived from the farming of this parcel. The court found that the land belonged to the church and to the Layden heirs and ordered the property to be sold and the funds distributed.

During the litigation, it was revealed that the Fund had executed three promissory notes to Schlarman High School Foundation,

totaling $75,000. Schlarman High School is an Illinois not-for-profit corporation subsidiary of the diocese located in Danville.

A stipulated final judgment order was entered on December 20, 1989, that provided, in part, for the creation of a trust agreement between the Fund and the parish. The trust agreement stated that "part of the assets of the trust are debts owing to the trust in part by Schlarman High School Foundation." However, the agreement also states that "the trustees are under no duty to collect said sums from Schlarman High School Foundation."

While the Fund litigation was still pending, plaintiff contacted O'Rourke and then-Chancellor Myers and advised them that, in his opinion, their actions were contrary to canon and civil law because they had been aware of the nature and source of the Fund and had approved the diversion of Fund monies to Schlarman High School without "due process or authorization." The basis of plaintiff's accusations was a May 23, 1979, telephone call that Myers had allegedly made in which he gave "official approval of the diversion of funds." Plaintiff recorded that information in the 1979 annual parish report by stating, "Tade Layden Estate Trust changes its beneficiary from St. Anthony Parish to Schlarman High School, with approval of Bishop O'Rourke."

On November 21, 1991, Bishop Myers issued a canonical decree, imposing the censure of suspension on plaintiff. This decree is the basis of plaintiff's instant action of defamation against Myers and the diocese. This decree states, in relevant part:

> "Father May has repeatedly declined to meet with the Bishop of Peoria, most recently on October 22, 1991.
>
> Father May, in addition to severe exhortations and admonitions, has received warnings that he will be suspended if he refuses to cooperate.
>
> Father May's wild charges have not been upheld by ecclesiastical courts or higher authorities.
>
> Father May threatens to continue his untrue and disruptive public statements."

The canonical decree also contained language that indicated the basis of plaintiff's discipline,

> "Furthermore, since Father George May is *engaged in a secular profession without the permission of the diocesan bishop, he is forbidden to wear clerical garb or to present himself as in any way representing the Catholic Church.*

Moreover, *since he has been absent from priestly assignment for a number of years,* \*\*\* *he will be considered a departed priest* \*\*\*." (Emphasis added.)

This court notes that plaintiff is now a licensed attorney in the State of Illinois.

Plaintiff sued Myers and the diocese on two counts of defamation. Specifically, plaintiff claims that Myers' statements characterizing him as a person who has made "wild charges" and who "threatens to continue his untrue and disruptive public statements" were libelous *per se.* Defendants moved to dismiss the action pursuant to section 2—614 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). This motion was granted with prejudice, and plaintiff appealed.

■ Plaintiff argues that the trial court erred in dismissing his action because Myers' statements constitute libel *per se.* A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him. (*Kolegas v. Heftel Broadcasting Corp.* (1993), 154 Ill. 2d 1, 10, 607 N.E.2d 201.) Statements that are considered to be defamatory *per se* occur when the defamatory character is apparent on its face and are typically within one of four classifications, two of which are at issue here. They are (1) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment, or (2) words that prejudice a party, or impute lack of ability in his trade, profession or business. (*Kolegas,* 154 Ill. 2d at 10.) *Per se* statements are so obviously and materially harmful to the plaintiff that injury to his or her reputation may be presumed. *Kolegas,* 154 Ill. 2d at 10.

Whether the particular language used in Myers' decree is defamatory *per se* is a question of law to be determined by the trial court. (*Homerin v. Mid-Illinois Newspapers* (1993), 245 Ill. App. 3d 402, 405, 614 N.E.2d 496.) In determining whether a statement is defamatory *per se,* courts apply the modified innocent construction rule. (*Powers v. Delnor Hospital* (1986), 148 Ill. App. 3d 844, 847, 499 N.E.2d 666.) The modified innocent construction rule is as follows:

"[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plain-

tiff it cannot be actionable *per se.*" *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.

■■ A reviewing court must consider all parts of the publication in order to ascertain the true meaning of the words. (*Valentine v. North American Co. for Life & Health Insurance* (1973), 16 Ill. App. 3d 277, 280, 305 N.E.2d 746, *aff'd* (1974), 60 Ill. 2d 168, 328 N.E.2d 265.) From a reading of the statement as a whole, it appears that the thrust of the censure is based on plaintiff's secular employment without the permission of the diocese, his absence from the diocese for a number of years, and his lack of regard for the warnings issued by the diocese. Plaintiff does not dispute these charges or even claim that they are defamatory. Myers' statements that plaintiff has made "wild charges" and "threatens to continue his untrue and disruptive public statements" do not on their face indicate that plaintiff is unable to discharge his duties for lack of integrity or impute a lack of ability to be a priest. Additionally, we find that a reading of these statements as not being actionable *per se* is reasonable under the modified innocent construction rule, because they are directed to plaintiff's relationship with Myers and the diocese and do not pertain to his knowledge or ability to perform the duties of his profession. See *Powers,* 148 Ill. App. 3d at 847.

Because we have found that the statements at issue were not defamatory *per se*, it is unnecessary to address the remaining arguments of the parties.

The order of the circuit court of Peoria County is affirmed.

Affirmed.

McCUSKEY, P.J., and STOUDER, J., concur.