BARRY HARLEM CORPORATION, d/b/a .The Desnick Eye Center, Plaintiff-Appellant, v. MANUS C. KRAFF, Defendant-Appellee.

First District (1st Division)  No. 1—92—3659

Opinion filed June 12, 1995.

Stamos & Trucco, of Chicago (Michael T. Trucco and John J. Lee, of counsel), for appellant.

Mayer, Brown & Platt, of Chicago (Patrick W. O'Brien, John M. Touhy, and Beth Eiseman Grey, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Barry Harlem Corporation, d/b/a The Desnick Eye

Center, filed suit against defendant, Dr. Manus C. Kraff, for an alleg-
edly defamatory statement defendant published. The trial court
dismissed plaintiff's complaint. It dismissed count I (defamation *per
se*) with prejudice, and dismissed count II (defamation *per quod*) and
count III (commercial disparagement) without prejudice. Plaintiff
elected to stand on the complaint and did not file an amended com-
plaint. The trial court dismissed the case in its entirety with preju-
dice on September 22, 1992. Plaintiff filed this appeal alleging that
the trial court erred: (1) in dismissing count I because the commen-
tary accused plaintiff of performing unsafe medical procedures and
advertising those procedures to procure patients; (2) in holding that
the statements in the commentary were nonactionable opinion; (3) in
finding that the fair comment and criticism privilege exists in Illinois
and that the facts of this case support it; and (4) in dismissing count I
because its complaint set forth a well-pleaded claim for libel *per se.*

Plaintiff treats eye disorders and in the winter of 1991 began a
widespread advertising campaign of no-stitch cataract surgery. Ac-
cording to plaintiff, it was the only ambulatory center in the Chicago
area to advertise the procedure and to perform this type of surgery.

Defendant is an ophthalmologist and a competitor of plaintiff. He
published a commentary in his eye institute's newsletter which was
distributed throughout the Chicago area. Plaintiff filed a three-count
complaint alleging that the commentary defamed plaintiff. Defen-
dant filed a section 2—615 motion to dismiss (Ill. Rev. Stat. 1989, ch.
110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))) which the
trial court granted. The commentary in full stated:

"[1] Currently, there is much marketing which includes the
advertising of no stitch cataract surgery in the lay media,
particularly newspapers, television and radio. [2] There are no
current masked double blind published studies showing any
advantage of no stitch over conventional surgery that uses stitches
to close the wound.

[3] The main advantage that I can see of no stitch surgery, at
the present time is one of advertising. [4] I certainly would encour-
age a scientific study to evaluate the alleged advantages of no
stitch, one stitch or multiple stitch procedures. [5] This should be
done in an unbiased scientific manner and not marketed in the
mass media with the intent of stimulating patient procurement.
[6] The patient does not have the scientific background to make
the decision about a highly specific surgical technique. [7] This de-
cision should be made by the ophthalmologist and discussed with
the patient.

[8] Until these studies can be performed comparing the benefits
and the risk of no stitch surgery, verses [*sic*] the conventional

newer methods of fine microscopic sutures, I see no need to perform this type of surgery as it may have an adverse affect [*sic*] on patients."

The first issue is whether the trial court erred in finding that the commentary was not defamatory *per se.*

A statement is defamatory if it tends to cause harm to the reputation of another such that it lowers that person in the eyes of the community or deters third persons from associating with him or her. (*May v. Myers* (1993), 254 Ill. App. 3d 210, 626 N.E.2d 725.) When the defamatory character is apparent on the face of the statement, it is defamatory *per se.* Such statements generally fall within one of four classifications, only two of which are implicated here: (1) statements which impute inability to perform or want of integrity in discharging the duties of one's office or employment, and (2) statements which prejudice a party or impute lack of ability in trade, profession, or business. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 238-39, 552 N.E.2d 973, 982.) *Per se* statements are so obviously and materially harmful to plaintiff that injury to his or her. reputation may be presumed. *May,* 254 Ill. App. 3d at 213, 626 N.E.2d at 727.

Plaintiff contends that the commentary accused it of fraud in procuring patients and in using unsafe and negligent medical techniques which were unproven. Based on the implications, context, and plain meaning, the commentary defames plaintiff. It argues that its complaint pled sufficient facts to demonstrate that the commentary was of and concerning plaintiff. The complaint states that plaintiff was the only ambulatory surgical center in Chicago performing no-stitch cataract surgery, that it was the only center to perform this type of surgery, and that it was the only center advertising the procedure. Because of these circumstances, reasonable third persons reading the commentary would know that the statements were about The Desnick Eye Center.

Defendant argues that the thrust of his commentary was to encourage a scientific study. The commentary was not about plaintiff, but about the no-stitch procedure. He contends that plaintiff has pled insufficient facts to show the commentary was about plaintiff. The complaint made no claim that plaintiff alone used or advertised the procedure; the complaint merely stated that plaintiff was the only "ambulatory" center to do so. The commentary did not expressly name plaintiff nor did it indirectly identify it. Because plaintiff relies on facts outside the commentary to show that it refers to plaintiff, the commentary is not defamatory *per se.*

A statement which does not mention the plaintiff by name cannot be injurious to him or her on its face. Extrinsic facts and circumstances must be pled to establish that the publication is defamatory

to him. (*Schaffer v. Zekman* (1990), 196 Ill. App. 3d 727, 731, 554 N.E.2d 988, 991.) The commentary did not mention plaintiff by name. It did not refer to "another eye center or institute," another medical provider, or any one of this nature. The commentary did not refer to the medical industry or profession at all. It discussed general marketing including, but not limited to, media advertising.

We find that the commentary does not so obviously refer to plaintiff that it is injurious on its face. Therefore, the commentary is not defamatory *per se.*

There is further support for a determination that the commentary is not defamatory *per se.* In determining whether a statement is defamatory *per se,* courts apply the innocent construction rule, focusing on the predictable effect the statement had on those who received the publication. (*Anderson v. Vanden Dorpel* (1994), 268 Ill. App. 3d 907, 645 N.E.2d 250.) The court in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, modified the innocent construction rule, holding that "statement[s] [are] to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement[s] may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, [they] cannot be actionable *per se.*" (*Chapski,* 92 Ill. 2d at 352, 442 N.E.2d at 199.) A reviewing court must consider all parts of the publication to ascertain the true meaning of the words (*May,* 254 Ill. App. 3d at 214, 626 N.E.2d at 727) and must adopt a nondefamatory interpretation "*if* [that interpretation] is *reasonable.*" (Emphasis in original.) *Mittelman,* 135 Ill. 2d at 234, 552 N.E.2d at 979.

■ We find that the commentary can be reasonably interpreted to refer to someone other than plaintiff. Based on the analysis above that the commentary does not so obviously refer to plaintiff, it is reasonable to conclude that it could refer to anyone who advertises or discusses the no-stitch procedure.

In *Rosner v. Field Enterprises, Inc.* (1990), 205 Ill. App. 3d 769, 564 N.E.2d 131, *appeal denied* (1991), 137 Ill. 2d 672, 571 N.E.2d 156, defendant published an article detailing an eight-month investigation of automobile insurance fraud involving persons known as "The Accident Swindlers." The article did not refer to plaintiff or mention him by name. A photograph accompanied the article which displayed plaintiff's name and specialty in the background, but did not picture him. Despite the photograph, the court found that the article could not reasonably be interpreted as referring to plaintiff. Defendant's commentary identifies plaintiff even less. There was no mention of plaintiff, no mention of its medical facility, and no mention of the

medical field. Therefore, the commentary could be reasonably and innocently construed to refer to someone other than plaintiff.

Similarly, the commentary is susceptible to an innocent, nondefamatory interpretation. Plaintiff contends that there is no innocent meaning because the natural and obvious import is that plaintiff practices harmful surgical techniques which have not been scientifically proven. Defendant counters that plaintiff strongly mischaracterizes his statements. Defendant did not state the procedure was unsafe, fraudulent, negligent, or substandard and notes that there are apparently studies which show some benefit. According to defendant, the commentary is susceptible of an innocent construction: that no-stitch benefits are undetermined. Defendant merely suggests the need for additional studies which should be done in a scientific and unbiased manner.

Plaintiff appears to find two statements most objectionable: sentences number three and eight, quoted above. Plaintiff's complaint relevant to these statements avers:

"9. The statements were false and defamatory in that:

\* \* \*

b. The Commentary states that The Desnick Eye Center performs no-stitch surgery only to allow it to market the procedure in the mass media with the intent of stimulating patient procurement.

11. These false statements prejudiced The Desnick Eye Center in its profession and trade and assailed The Desnick Eye Center in its methods and accused it of fraud in the procurement of patients through advertising allegedly unsafe and negligent medical techniques.

\*\*\*

13. The false statements published by Defendant Kraff as set forth in paragraph[s] 5 and 9 are defamatory in that they falsely accuse the Desnick Eye Center of advertising unsafe and unproven surgical techniques solely to procure patients who otherwise would not have had surgery using this technique and who, by virtue of being subjected to this surgical technique, are at greater risk of adverse affects [sic] from the surgery.

\* \* \*

16. The statements made by Defendant Kraff referred to the practices of The Desnick Eye Center as being substandard, negligent and harmful to patients who present themselves for treatment at The Desnick Eye Center. Furthermore, the statements allege that The Desnick Eye Center advertises and employs no-stitch surgery merely for the purpose of patient procurement without regard to the safety of the patient."

In paragraph 9(b), plaintiff completely rewrites defendant's statement. The commentary does not "state" what plaintiff says it does; rather, it suggests and encourages research. Moreover, the commentary does not say that the *only* advantage of the procedure is advertising, but it says the *main* advantage. Defendant is not intimating that there is anything wrong or negligent in advertising, instead, this is not his chosen practice. He in no manner proclaims that the procedure is unsafe or should not be performed. In sentence eight, although he states that the procedure *may* have adverse effects, he does not declare that these effects are unsafe. Adverse effects come in many forms which may not be unsafe. The no-stitch procedure may be uncomfortable, irritable, or require a longer recovery period. These effects are not necessarily harmful.

Taking the statement in context and plaintiff's apparent need to supplement and interpret the commentary, the statements standing alone are not defamatory *per se*. They reasonably can be innocently construed. Defendant did not employ the language plaintiff contends, *e.g.*, fraud, unsafe, negligent, substandard, unproven, or harmful. The statements were communicated in a newsletter from defendant's eye institute under the heading *"Commentary."* "Comment" is defined as: "an observation or remark expressing an *opinion* or attitude concerning what has been seen or heard or concerning the subject at hand." (Webster's Third New International Dictionary 456 (1981).) The newsletter is clearly a competitor's advertisement touting its own services as opposed to the services of others. The newsletter format does not connote a critical or authoritative scientific document, merely the beliefs of one competitor. The clear import of the commentary is to encourage further research and studies and to obtain his own patients.

The commentary differs from the statements in *Lowe v. Rockford Newspaper, Inc.* (1989), 179 Ill. App. 3d 592, 534 N.E.2d 549, *appeal denied* (1989), 126 Ill. 2d 560, 541 N.E.2d 1107, in which the court found that the article depicted plaintiff as a car thief under the guise of being an automobile repossessor and the article was not susceptible to an innocent construction. Defendants chose the verb "to steal" instead of less insinuating terms such as "to take" or "to repossess." The court found that it took "no great leap of logic to conclude that one who steals is a thief." (*Lowe,* 179 Ill. App. 3d at 596, 534 N.E.2d at 552.) In addition, had defendant qualified the statements with "allegedly," this would have tempered the article so that readers would have been alerted that the statements were unproven assertions and not proven facts. *Lowe,* 179 Ill. App. 3d at 596, 534 N.E.2d at 552.

Unlike the case before us, *Lowe* involved the imputation of crim-

inal acts. Second, defendant did not refer to a person in the commentary; the article in *Lowe* named plaintiff and extensively referred to him and his activities. Finally, the commentary was written in the first person with the writer stating his beliefs. It was not the report of some factual event which transpired as in *Lowe*. Therefore, plaintiff's reliance on *Lowe* is misplaced.

Because defendant's statements can be reasonably innocently interpreted and reasonably interpreted to refer to someone other than plaintiff, we find the trial court properly granted defendant's motion to dismiss count I for failure to state a claim. The second issue is whether plaintiff pled sufficient allegations to demonstrate that the commentary was defamatory *per quod*.

Plaintiff alleges it set forth specific facts to demonstrate the commentary defamed it. Defendant contends that plaintiff failed to allege any extrinsic facts to show that the nondefamatory statements were libelous. The plaintiff mangled the interpretation and meaning of the statements and has pled no facts to show the commentary connotes fraud, negligence, lack of ethics, or lack of safeness. In addition, plaintiff has not pled sufficient facts to allege special damages.

*Per quod* statements are not defamatory on their face and require extrinsic facts or innuendo to explain their defamatory meaning. (*Homerin v. Mid-Illinois Newspapers* (1993), 245 Ill. App. 3d 402, 614 N.E.2d 496.) Plaintiff must allege special damages with particularity. *Rosner v. Field Enterprises, Inc.* (1990), 205 Ill. App. 3d 769, 564 N.E.2d 131, *appeal denied* (1991), 137 Ill. 2d 672, 571 N.E.2d 156.

The only facts plaintiff alleged in its complaint were that a double-blind study was impossible to perform, that other existing studies show the advantages of no-stitch surgeries, and that defendant was involved in a study regarding the benefits of the procedure.

■ We find that these facts are insufficient to show how the nondefamatory statements become defamatory. The accuracy of the allegation that double-blind tests are impossible to perform is questionable. It does not show how the commentary, which encourages additional studies, accuses plaintiff of fraudulent or deceptive practices. It also does not imply how the no-stitch surgery is unsafe. As to the existing studies, plaintiff merely concludes that there are studies which show advantages of the no-stitch procedure. However, plaintiff does not identify those advantages and does not allege that defendant knew of those advantages. Again, this fact does not demonstrate that defendant was disparaging plaintiff when he wrote the commentary. The fact that defendant was himself involved in a study is also insufficient. There is no allegation as to what type of study was performed or what the results were. The complaint does not

show how defendant is imputing fraud and negligent practices onto plaintiff. Because there are insufficient facts to show how the commentary does anything other than encourage additional studies, the trial court properly dismissed count II.

Defendant further argues plaintiff failed to sufficiently allege special damages and, therefore, cannot state a claim for defamation *per quod*. We agree with defendant. Plaintiff's complaint states: "[U]pon information and belief, [plaintiff] has lost patients who would have otherwise presented themselves for treatment at the Desnick Eye Center but did not do so."

In *Taradash v. Adelet/Scott-Fetzer Co.* (1993), 260 Ill. App. 3d 313, 628 N.E.2d 884, *appeal denied* (1994), 155 Ill. 2d 577, 633 N.E.2d 15, the court held that plaintiff's allegations pertaining to special damages were insufficient. Plaintiff alleged that customers refused to deal with him, he was hindered from selling his product, and he suffered lost commissions and income. The court found these allegations to be in the nature of general economic losses, *e.g.*, general damages. Plaintiff did not allege that "would be" customers told him they would no longer do business with him based on defendant's statements. Additionally, plaintiff did not point to any actual loss which resulted from the alleged injury.

Conversely, in *Halpern v. News-Sun Broadcasting Co.* (1977), 53 Ill. App. 3d 644, 368 N.E.2d 1062, the court held that an allegation that plaintiff lost income and continued to lose income as a result of patients leaving its nursing home and other patients removing their applications was a sufficient allegation of special damages.

As in *Taradash*, plaintiff has not alleged that any patients advised it that because of the statements in the commentary, they would not seek services from plaintiff. It has not alleged that any appointments were cancelled or that any patient who had consulted, but not yet made a decision, advised it that he or she would not proceed with no-stitch surgery because of the commentary. This is unlike the situation in *Halpern* where patients actually left the home and other patients withdrew their applications. We find that plaintiff's complaint failed to allege special damages.

Therefore, the trial court properly dismissed count II of plaintiff's complaint because it failed to allege specific extrinsic facts to show how the commentary was defamatory and failed to allege special damages.

Because we determine that the commentary was neither defamatory *per se* nor defamatory *per quod*, we need not address plaintiff's third and fourth issues concerning the fair comment privilege and constitutionally protected opinion.

396

The final issue is whether plaintiff's complaint sufficiently stated a cause of action for commercial disparagement.

Plaintiff contends that this cause of action is still viable in Illinois and that it has satisfied the pleading requirements. Defendant argues that the cause of action no longer exists. Even if it does, plaintiff has failed to state a cause of action because this cause of action applies to products and plaintiff is supplying a procedure.

■ A recent Federal court decision acknowledged the dispute as to whether this cause of action remains viable in Illinois. Nonetheless, it addressed the claim. (*Appraisers Coalition v. Appraisal Institute* (N.D. Ill. 1994), 845 F. Supp. 592, 610.) To state a cause of action, plaintiff must show that defendant made false and demeaning statements regarding the quality of another's goods and services. (*Appraisers Coalition*, 845 F. Supp. at 610.) Based on a finding that the commentary was not defamatory *per se* and that plaintiff failed to allege sufficient facts to show how the commentary became defamatory, we find that plaintiff failed to plead sufficient facts to state a cause of action for commercial disparagement. Therefore, the trial court properly dismissed count III.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and WOLFSON, J., concur.