**Wallace BRADLEY, Plaintiff,**

v.

**AVIS RENTAL CAR SYSTEM, INC., a Delaware Corporation licensed to do business in Illinois, Defendant.**

**No. 94 C 2333.**

United States District Court, N.D. Illinois.

Oct. 10, 1995.

Elliot R. Zinger, Jason Emil Orth, Elliot Zinger & Associates, Chicago, IL, for plaintiff.

Alan Warren Brothers, Cheryl J. Colston, Carney & Brothers, Ltd, Arnold H. Landis, Law Office of Arnold H. Landis, Chicago, IL, for defendant.

## MEMORANDUM ORDER AND OPINION

GETTLEMAN, District Judge.

Plaintiff, Wallace Bradley, brings this diversity jurisdiction action against defendant, Avis Rental Car System, Inc., asserting claims for negligence, negligent infliction of emotional distress, defamation *per se,* malicious prosecution and willful and wanton misconduct. Defendant has moved for summary judgment on all counts pursuant to Fed. R.Civ.P. 56(b). For the reasons stated below, the court denies the defendant's motion

for summary judgment with respect to Counts I (negligence) and V (willful and wanton misconduct), and grants defendant's motion for summary judgment on Counts II, III, and IV (negligent infliction of emotional distress, defamation *per se,* and malicious prosecution, respectively).

## FACTS

On July 25, 1993, plaintiff presented a drivers license and passport to an agent of defendant, Linda Wilson ("Wilson"), at O'Hare International Airport and requested to rent an Avis vehicle. Plaintiff did not possess a credit card and intended to pay for the vehicle by personal check. Wilson, however, would not rent the vehicle to plaintiff without some security. John Davis ("Davis"), an acquaintance of plaintiff who was with him at the time, provided a WBBM Television Station Company Travel Voucher to secure the rental of a vehicle. Davis signed a Rental Agreement which listed Davis of WBBM as the renter of a red Cadillac. Plaintiff's name does not appear anywhere on the July 25, 1993, Rental Agreement or on an additional driver form. Nonetheless, plaintiff provided defendant with a personal check for the rental, which was ultimately deposited in defendant's corporate account.

On August 23, 1993, plaintiff returned the red Cadillac to defendant at its O'Hare International Airport location. Plaintiff returned the vehicle alone and Wilson was, once again, the rental agent on duty. At that time, plaintiff obtained a white Cadillac, providing another WBBM Television Station Company Travel Voucher to secure payment. Wilson manually created the August 23, 1993, Rental Agreement because defendant's computer system was inoperable. The August 23, 1993, agreement again listed WBBM as the renter. Plaintiff's name did not appear on the Rental Agreement, nor was he listed as an additional driver. Wilson nonetheless gave plaintiff the keys to the white Cadillac. Defendant misplaced the manually created Rental Agreement before the computer system became operable the next day.

On September 17, 1993, Tammy Collins ("Collins"), a Security, Customer Service,

Lost and Found Clerk for defendant, completed a Missing Vehicle Report regarding the white Cadillac, because defendant's records indicated that the car was last seen on August 22, 1993. As a result, Collins and Steve Branstiter, an Avis manager, searched for the car. They contacted the last known driver and checked body/warranty repair shops, vehicle storage areas, accident/breakdown logs, and "turn-back facilities". All their efforts were futile because plaintiff possessed the car.

After Collins and Branstiter were unable to locate the vehicle, Ronald Van Raalte, an Avis Security and Safety Manager for the Great Lakes Zone, authorized the filing of a stolen vehicle report with the Chicago Police Department on November 8, 1993. On November 24, 1993, plaintiff was arrested while in possession of the white Cadillac and subsequently charged with criminal trespass to a vehicle. On the same day, November 24, 1993, Carl Fiel, an Avis employee, signed a criminal complaint against plaintiff. On March 16, 1994, the criminal charge of trespass to a vehicle was stricken from the docket with leave to reinstate.

## SUMMARY JUDGMENT STANDARDS

■ Under Fed.R.Civ.P. 56(c), a court should grant a summary judgment motion if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The burden rests on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The court reviewing a summary judgment motion must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■ If the party opposing summary judgment bears the burden of proof on a dispositive issue, it must offer specific evidence demonstrating a factual basis on which it is entitled to relief. *Id.*, at 256, 106 S.Ct. at 2514. The party opposing summary judgment may not rely on conclusory allegations or speculation. *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 402 (7th Cir., 1992). Instead, the non-moving party must set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2514. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.*, 477 U.S. at 247–248, 106 S.Ct. at 2510.

## COUNT I—NEGLIGENCE

■ Count I of plaintiff's complaint alleges a claim for negligence. To prevail on a negligence claim a plaintiff must prove: 1) the existence of a duty owed by the defendant to the plaintiff; 2) a breach of that duty; and 3) an injury proximately caused by the breach of duty. *Teter v. Clemens*, 112 Ill.2d 252, 97 Ill.Dec. 467, 492 N.E.2d 1340 (1986). Defendant argues that it does not owe a duty to plaintiff and is therefore entitled to judgment as a matter of law.

Plaintiff contends that defendant owed him several duties:

1) to exercise reasonable care in maintaining their records and similar data;

2) to exercise reasonable care in the administration of their procedures to ensure that all automobiles are correctly accounted for and able to be located;

3) to demand in writing the return of any rented automobile before reporting the automobile stolen;

4) to research thoroughly the location of any automobile before reporting the automobile stolen;

5) not to act in any manner that would injure plaintiff's reputation or well being;

6) to act with reasonable diligence to confirm the validity of any evidence that would exculpate plaintiff against charges of auto theft or trespass to vehicle;

7) not to continue to assert that plaintiff's rented automobile was stolen once defendant had learned that in fact the automobile was not stolen;

8) generally to act in a reasonable manner towards plaintiff.

 The existence of a duty is a question of law. *Milz v. M.J. Meadows Inc.*, 234 Ill.App.3d 281, 286, 175 Ill.Dec. 276, 599 N.E.2d 1290 (1st Dist.1992). The court must determine whether the defendant and the plaintiff stood in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Kirk v. Michael Reese Hosp. & Medical Center*, 117 Ill.2d 507, 525, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987). In determining whether the law imposes a duty, the court considers the likelihood of harm, the magnitude of the burden in guarding against the harm, and the consequences of placing the burden on the defendant. *Lance v. Senior*, 36 Ill.2d 516, 518, 224 N.E.2d 231 (1967).

Whether defendant owes one or more of the aforementioned duties to plaintiff depends on the relationship between the two. *Kirk*, 117 Ill.2d at 525, 111 Ill.Dec. 944, 513 N.E.2d 387. Defendant contends that it does not owe a duty to anyone who is not listed as a renter or driver on a Rental Agreement. In essence, defendant asserts that any duty it owes must arise out of a contractual relationship with its customers. Otherwise, defendant argues, it would owe a duty to everyone and would be subject to liability for "negligence in the air." Of course, "[p]roof of negligence in the air, so to speak, will not do." *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). In the instant case, defendant's argument is without merit.

 To determine whether defendant and plaintiff stood in such a relationship to one another that the law imposes upon defendant an obligation of reasonable conduct for the benefit of plaintiff, it is obviously necessary to identify the relationship between them. On July 25, 1993, plaintiff presented a drivers license and passport to Wilson in an effort to rent a vehicle. Plaintiff did not, however, possess a credit card. As a result, Davis provided a WBBM Voucher to secure the rental of a vehicle. Nonetheless, plaintiff provided defendant with a personal check as payment for the rental, which was ultimately deposited in defendant's corporate account.

In addition, on August 23, 1993, plaintiff traveled to O'Hare International Airport, alone, and returned the vehicle to defendant. At that time, defendant provided plaintiff with the keys to another vehicle. Although plaintiff's name was not listed on the second Rental Agreement, defendant, through its agent, could have but did not ask plaintiff to sign the Agreement or an additional driver form. It is uncontested that plaintiff took possession of the vehicle with defendant's permission. Consequently, plaintiff was a customer of defendant despite the omission of plaintiff's name on the Rental Agreement. As such, even under defendant's theory,[1] defendant owes a duty of care to plaintiff as a customer.[2]

Turning now to the factors espoused in *Lance*, the court must examine the likelihood of harm, the magnitude of the burden in guarding against the harm, and the consequences of placing the burden on the defendant. *Lance*, 36 Ill.2d at 518, 224 N.E.2d 231. This case exemplifies the likelihood of the harm in failing to keep adequate records to ensure that legitimately rented vehicles are not reported stolen. The failure to keep adequate records will undoubtedly harm those persons who take possession of a rental car with defendant's permission. Moreover, the burden in guarding against this harm is nominal because defendant currently main-

---

1. Because the court finds that defendant owed plaintiff a duty of care as a customer, it does not reach the issue of whether defendant would owe a duty to a non-customer who drives one of defendant's vehicles with permission from a customer but without signing an additional driver form. It seems apparent that such a vehicle driven by such a person could not properly be considered stolen.

2. Defendant claims that the rental documents establish that the only two parties to the contract were defendant and WBBM, but fails to offer any evidence that plaintiff had actual or apparent authority to enter into a contract for WBBM. It is clear from the facts presented that defendant's agent regarded plaintiff as the renter.

tains records in an effort to locate the whereabouts of its vehicles at all times. As a result, there are no impermissible consequences of placing such a burden on defendant.

After considering the relationship between plaintiff and defendant, the likelihood of harm, the magnitude of the burden in guarding against the harm, and the consequences on placing this burden on defendant, the court finds, as a matter of law, that defendant owed plaintiff a duty to maintain its records in a manner that would preclude reporting the vehicle in question stolen, and a duty to investigate before instituting criminal charges against plaintiff. Accordingly, the court denies defendant's motion for summary judgment on Count I, alleging negligence.

## COUNT II—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, plaintiff concedes that summary judgment in favor of defendant is proper for plaintiff's claim of negligent infliction of emotional distress. Accordingly, the court grants defendant's motion for summary judgment on Count II.

## COUNT III—DEFAMATION *PER SE*

Count III of plaintiff's complaint alleges that certain statements made by defendant about him are defamatory *per se*. More specifically, paragraph 20 of Count III alleges that statements made on November 8, 1993, to law enforcement agencies are defamatory *per se*. Paragraph 21 of Count III alleges statements made by the defendant to the Cook County State's Attorney Office, the Chicago Police Department, and numerous media publications are defamatory *per se*.

■■■ Defamation is the publication of disreputable untruths about another to a third person. *Suhadolnik v. City of Springfield*, 184 Ill.App.3d 155, 185, 133 Ill.Dec. 29, 540 N.E.2d 895 (4th Dist.1989). Under Illinois law, statements are defamatory *per se* when they so obviously and naturally harm plaintiff that damages are presumed. *Miller*

*v. Danville Elks Lodge 332*, 211 Ill.App.3d 145, 151, 155 Ill.Dec. 549, 569 N.E.2d 1160 (4th Dist.1991). Statements that falsely "impute the commission of a criminal offense" involving moral turpitude are defamatory *per se. Id.* It is not necessary for the statement to contain the technical language of the criminal charge in assessing whether the statement is in fact defamatory *per se. Lowe v. Rockford Newspaper Inc.*, 179 Ill.App.3d 592, 595, 128 Ill.Dec. 367, 534 N.E.2d 549 (2nd Dist.1989). Whether a statement constitutes defamation *per se* is a question of law. *Miller*, 211 Ill.App.3d at 151, 155 Ill.Dec. 549, 569 N.E.2d 1160.

■■■ In Illinois, statements or reports to law enforcement agencies concerning suspected criminal activity are absolutely privileged. *Vantassell–Matin v. Nelson*, 741 F.Supp. 698, 705 (N.D.Ill.1990). Accordingly, the statements to law enforcement officials alleged in complaint paragraphs 20 and 21 are not actionable. *Id.*

Plaintiff maintains that the following statements made to the media, as reported in a Chicago Tribune article dated November 25, 1993, and a news wire story issued November 24, 1993, are defamatory *per se:*

1) "an Avis official gave a different story about when the car was rented. According to their records the car was last seen on the lot August 22."

2) "[I]t probably took so long to file the report because of the vast inventory of automobiles the company has."

3) "We have to do a lot of research including checking auto shops, before we can report a car missing."

4) "The car was returned by a female and that he found no record of Davis renting the car."

■■■ Plaintiff asserts that these statements "can only be construed as defamatory *per se.*" There are several flaws with plaintiff's position. First, the aforementioned statements are true. Truth is a defense, indeed the ultimate defense, to any action for defamation. *Pope v. The Chronicle Pub. Co.*, 891 F.Supp. 469, 474 (C.D.Ill.1995). Second, the statements simply do not state, or even imply, that plaintiff committed a criminal act.

In fact, the only message conveyed by the statements attributable to defendant is that defendant filed a missing vehicle report. The statements made by defendant do not even mention plaintiff. Because the statements do not publish disreputable untruths about the defendant to the media they are not defamatory.

 Even if these statements could be construed to impute a criminal offense by plaintiff, the court must consider the statements in light of the innocent construction rule, which provides that statements that may be reasonably given an innocent interpretation are not defamatory *per se. Miller*, 211 Ill.App.3d at 151, 155 Ill.Dec. 549, 569 N.E.2d 1160. The court must examine the statements in context and give the words and implications their obvious meanings. *Id.*

The statements alleged by plaintiff to be defamatory *per se* are reasonably capable of an innocent construction. The statements reflect what actually occurred in this case: due to a clerical error defendant lost the August 23, 1993, Rental Agreement, which prompted defendant to report a stolen vehicle. As a result, the statements made by defendant are not defamatory *per se*. Accordingly, the court grants defendant's motion for summary judgment on Count III.

### COUNT IV—MALICIOUS PROSECUTION

 Count IV of the complaint alleges a claim for malicious prosecution. In order to prevail on a claim for malicious prosecution in Illinois, the plaintiff must prove:

(1) the commencement or continuance of an original or criminal judicial proceeding by the defendant; (2) termination of the prosecution in favor of the plaintiff in a manner indicative of the innocence of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and, (5) damages resulting to the plaintiff.

*Khan v. American Airlines*, 266 Ill.App.3d 726, 731–732, 203 Ill.Dec. 171, 639 N.E.2d 210 (1st Dist.1994).

Summary judgment in favor of the defendant is appropriate if one, or more, of the aforementioned elements is absent. *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 45, 44 Ill.Dec. 260, 411 N.E.2d 229 (1980). Defendant moves for summary judgment on Count IV on the grounds that the underlying criminal proceeding was not terminated in a manner indicative of plaintiff's innocence, and that plaintiff cannot establish the lack of probable cause or the presence of malice.

 The court will first examine defendant's contention that the criminal proceeding was not terminated in a manner indicative of plaintiff's innocence. The Certified Record of Conviction/Disposition reveals that on March 16, 1994, the criminal case against plaintiff was stricken from the docket with leave to reinstate. In *Brown v. Officer Larry Campbell # 5822*, 1995 WL 229033, *2 (N.D.Ill.1995), the court stated:

Case law on this issue is clear and unmistakable: the striking of a case from a criminal docket with leave to reinstate is not a legal termination of the proceedings in a manner indicative of plaintiff's innocence. (Citation omitted).

As a result, an order striking a criminal case from the docket with leave to reinstate cannot provide the basis for a malicious prosecution claim. *Id.; King v. Avila*, 760 F.Supp. 681, 683 (N.D.Ill.1989).

On March 16, 1994, the plaintiff also requested a speedy trial pursuant to the Illinois Speedy Trial Act. 725 ILCS 5/101 (West 1994). As a result, plaintiff argues that 160 days from March 16, 1994, or on August 23, 1994, the criminal action was terminated in plaintiff's favor. Plaintiff offers *Rich v. Baldwin*, 133 Ill.App.3d 712, 88 Ill.Dec. 748, 479 N.E.2d 361 (5th Dist.1985), for the proposition that dismissal of the underlying criminal charges on speedy trial grounds constitutes a termination in favor of the plaintiff. However, as the Certified Record of Conviction/Disposition indicates, plaintiff's criminal charges were not dismissed on speedy trial grounds. Thus, plaintiff's reliance on *Rich v. Baldwin* is inappropriate. *Brown*, 1995 WL 229033 at *2.

As a result of plaintiff's inability to prove termination of the prosecution in his favor in a manner indicative of his innocence, it is

unnecessary to address defendant's arguments regarding probable cause and the absence of malice. Accordingly, the court grants defendant's motion for summary judgment on count IV of the complaint, malicious prosecution.

## COUNT V—WILLFUL AND WANTON MISCONDUCT

■ Willful and wanton misconduct, like negligence, can be established only if there is a finding of duty, breach of duty, and proximate cause. To prevail on a willful and wanton misconduct claim, however, plaintiff must also prove that defendant intended to injure plaintiff or acted in reckless disregard for plaintiff's safety. *Cozzi v. North Palos Elementary School Dist. No. 117,* 232 Ill. App.3d 379, 383, 173 Ill.Dec. 709, 597 N.E.2d 683 (1st Dist.1992). Plaintiff alleges that defendant willfully and wantonly breached one or more of the following duties:

1) failed to maintain its records and similar data in a reasonable manner;

2) failed to demand in writing the return of any rented automobile before reporting said automobile stolen;

3) failed to demand in writing the return of any rented automobile before initiating criminal proceedings for trespass to vehicle;

4) failed to research thoroughly the location of plaintiff's rented automobile before reporting the automobile as stolen;

5) failed to research thoroughly whether plaintiff had a legal right to possess the vehicle before initiating criminal proceedings against plaintiff for trespass to the automobile;

6) failed to act with diligence to confirm the existence and validity of any evidence that would have exculpated plaintiff against charges of trespass to vehicle;

7) continued to assert that plaintiff's rented automobile was stolen once defendant had knowledge that in fact the automobile was not stolen; and

8) continued to assert that plaintiff was trespassing to the automobile after defendant had knowledge that written demand for return was not issued and that in fact plaintiff had not trespassed to the vehicle.

Defendant argues that plaintiff has offered no evidence to prove defendant's alleged intent to injure plaintiff or recklessly disregard plaintiff's safety. Plaintiff responds by asserting that: (1) defendant was aware at the time of plaintiff's arrest that the vehicle contained a rental contract, car keys and a WBBM voucher belonging to Davis; (2) Wilson's identification number was on that contract; (3) Wilson informed the press that she rented the vehicle to plaintiff; and (4) Davis was never contacted by defendant to clarify the matter. Without offering any authority or support for these assertions, plaintiff concludes that "there was no 'reasonable' search for any of the documents, contracts, Mr. Bradley's personal check or other records previously cited in order to ascertain the truth of the matter."

■ It is undisputed that: (1) the August 23, 1993, Rental Agreement was manually created and ultimately misplaced; (2) on September 17, 1993, Collins completed a Missing Vehicle Report with respect to the white Cadillac; (3) Collins and Branstiter, searched for the white Cadillac by contacting the last known driver and checking body/warranty repair shops, vehicle storage areas, accident/breakdown logs, and turnback facilities; and (4) only after the unsuccessful search did Van Raalte authorize the filing of a stolen vehicle report with the Chicago Police Department on November 8, 1993. As a result, there are no issues of material fact regarding the plaintiff's allegation of willful and wanton conduct with respect to defendant's actions prior to plaintiff's arrest.

■ On the other hand, neither party has cited to any evidence in the record with respect to defendant's knowledge of the existence of a Rental Agreement in the white Cadillac or the circumstances of Wilson's renting the car to plaintiff at the time defendant signed the criminal complaint or at any time thereafter. As a result, there exist genuine issues of material fact regarding the defendant's alleged willful and wanton misconduct in: (1) signing the criminal complaint against plaintiff; and (2) continuing to assert

that plaintiff committed a criminal act. Accordingly, the court denies defendant's motion for summary judgment on Count V.

## CONCLUSION

For the reasons set forth above, the court denies defendant's motion for summary judgment on Counts I and V, negligence and willful and wanton misconduct, and grants defendant's motion with respect to Counts II, III, and IV.