MICHAEL SCHAFFER, Plaintiff-Appellant, v. PAM ZEKMAN *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—89—0238

Opinion filed March 30, 1990.

Rooks, Pitts & Poust, and Robert Maloney, both of Chicago (Lee Hettinger, of counsel), for appellant.

Jenner & Block, of Chicago (Linda Lindstrom and Susan Theiss, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Dr. Michael Schaffer (Schaffer), plaintiff, brought an action against defendants Pam Zekman (Zekman), Gary Cummings (Cummings), and CBS, Inc. (CBS) (sometimes jointly, defendants), alleging defamation and false-light invasion of privacy. Defendants' motion to dismiss Schaffer's second amended complaint (complaint), pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) (section 2—615), was granted with prejudice by the circuit court, from which Schaffer appeals.

Schaffer is chief toxicologist employed by the Cook County medical examiner. Defendant Zekman is an investigative reporter for WBBM-TV, a television station owned and operated by defendant CBS.

Defendant Cummings, formerly the vice-president and general manager of WBBM-TV, died on October 31, 1987.

Schaffer's actions for defamation (libel) and invasion of privacy (false-light) stem from a WBBM-TV broadcast aired February 28, 1985, wherein Cummings, in an editorial entitled "Clean Up the Medical Examiner's Office," referred to a series of reports previously broadcast by Zekman that described "how evidence was mishandled by the Medical Examiner's Office." Nine months earlier, in May of 1984, in the second of a four-part series,[1] Zekman had disclosed that toxicologists, unnamed, in the medical examiner's office "made two mistakes" while handling evidence in the infamous Tylenol-cyanide murder cases: in testing for the presence of cyanide in the Tylenol capsules recovered after the deaths, they failed to retain a portion of the specimen in its original form in the event retesting became necessary, and they used contaminated water in analyzing the samples. Zekman then stated:

> "The Medical Examiner's Chief Toxicologist Michael Schaefer [sic] would not agree to an on-camera interview. But he defended his lab's actions during the Tylenol crisis. He said that at the time, he was not aware of the FDA's ability to analyze the samples. And he said he thought there was enough residue in the empty capsules for the FDA to use. Schaefer [sic] said the water used in his tests was as chemically pure as needed. And he accused law enforcement agencies of using the Medical Examiner's Office as a scapegoat."

Accompanying Schaffer's above-quoted comments, CBS displayed in the video portion a close-up image of Schaffer to the viewing audience. Also during the report, a former assistant Attorney General characterized the handling of the evidence as "unprofessional" and "slipshod," and suggested it "hopelessly crippled part of" any subsequent prosecution.

In the 1985 editorial, Cummings expressed concern that the Cook

---

[1]The four-part series, entitled "Dead Wrong," appeared on four successive nights, from May 6 - 9, 1984, during WBBM-TV's 10 p.m. newscast, and described what it characterized as "major problems" in the medical examiner's office. Part 1, "Homicides," criticized several autopsies performed by that office which failed to classify the deaths as homicides; Part 2, "Toxicology," denounced the toxicologists' testing of samples in the Tylenol-cyanide murder investigation, as well as in other inquiries involving drug overdoses; Part 3, "Dr. Beamer," highlighted the "mistakes" of one pathologist in the medical examiner's office; and Part 4, "Child Abuse," found fault with several investigations by the medical examiner's office in cases of suspected child abuse, and in particular, focused on one autopsy performed by Dr. Robert Stein.

County Board of Commissioners was not taking steps to correct the "scandal" in the medical examiner's office, "apparently" in the hope that "everybody will forget" the problem. Cummings concluded the editorial by calling upon the Board of Commissioners to fire Dr. Robert Stein, the chief medical examiner. In the course of the entire broadcast, Cummings never mentioned Schaffer by name, nor identified him or the position of "toxicologist"; neither did he explicitly refer to the Tylenol murder investigation.

Schaffer brought an action against defendants, alleging defamation (count I) and invasion of privacy (count II). According to count I, on February 28, 1985, CBS broadcast Cummings' editorial, in which he remarked, "It was nine months ago *** that Pam Zekman and the Channel 2 investigative team told how evidence was mishandled by the Medical Examiner's Office." The complaint further alleged Cummings' statement was "of and concerning" Schaffer; at the time the statement was published, the medical examiner's office employed only two toxicologists, including Schaffer, who was chief toxicologist; a substantial portion of the television audience reasonably understood the statement to refer to Schaffer; Schaffer's professional reputation was disgraced and injured; the statement was false; and defendants published the statement knowing it was false or with reckless disregard for its truthfulness.

Count I then asserted Cummings' statement made reference to, and was understood by a substantial portion of the television audience to whom it was published to refer to, the second segment of the four-part series presented in 1984 by Zekman which described the notorious Tylenol murders. According to Schaffer, Zekman therein claimed no prosecution would occur in those deaths "because the Medical Examiner's Office ruined samples of the poison."

Schaffer, in paragraph 5 of count I, alleged the following:

"Because the February 1985 broadcast referred specifically to the May 1984 broadcasts and because the only person identified in the May 1984 broadcasts as 'mishandling evidence' was Dr. Schaffer, and because Dr. Schaffer was the only one identified in the May 1984 broadcast as handling the evidence or performing the tests in the Tylenol case, a substantial portion of the television audience to whom the February 1985 broadcast was published reasonably understood the statement 'evidence was mishandled by the Medical Examiner's Office' to refer to Dr. Schaffer and to no one else."

At the time of Cummings' 1985 editorial, continued Schaffer, defendants knew the statements concerning the "mishandling" of evidence

were false. He then prayed for monetary damages for emotional distress and public humiliation. In a second count, Schaffer alleged the broadcast invaded his privacy by placing him in a false light.

At the hearing on defendants' section 2—615 motion, argument focused on the sufficiency of the colloquium pleaded in the complaint. Finding it lacking, the circuit court granted defendants' motion. Schaffer appeals.

I

■ Dr. Schaffer first contends the circuit court improperly dismissed his claim for defamation, arguing count I of the complaint sufficiently alleged that the purportedly defamatory remarks were "of and concerning" him. In reviewing the circuit court's dismissal, this court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom to determine, as a matter of law, whether the pleadings state a cause of action. (*Harris Trust & Savings Bank v. Phillips* (1987), 154 Ill. App. 3d 574, 579, 506 N.E.2d 1370.) Conclusions of law or conclusions of fact not supported by allegations of specific facts will not be considered. *Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 433, 444 N.E.2d 253.

■ Defamatory statements may be actionable *per se* or actionable *per quod*. A publication is defamatory *per se* if it is "so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary" (*Owen v. Carr* (1986), 113 Ill. 2d 273, 277, 497 N.E.2d 1145); the defamatory character of the statement is apparent on its face, and extrinsic facts are not necessary to explain. (*Brown & Williamson Tobacco Corp. v. Jacobson* (7th Cir. 1983), 713 F.2d 262, 267.) Statements are actionable *per quod* if they necessitate extrinsic facts or innuendo to explain their defamatory meaning, and require evidence demonstrating, as a matter of fact, that some substantial injury resulted to the aggrieved person from their use. *Heerey v. Berke* (1989), 188 Ill. App. 3d 527, 532, 544 N.E.2d 1037.

A

■ According to Schaffer, his complaint seeks recovery for defamation *per se*. Statements are defamatory *per se* if they impute, among other things, an inability to perform or lack of integrity in the discharge of duties of office or employment; or a lack of ability in a person's trade, business, or profession. (*Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402, 414, 532 N.E.2d 790.) Here, the allegedly defamatory statement, "evidence was mishandled by the

Medical Examiner's Office," implicates these categories.

 The statement at issue, however, does not mention Schaffer by name, cannot be injurious to him on its face (*Moore v. Streit* (1989), 181 Ill. App. 3d 587, 597-98, 537 N.E.2d 408), and is not defamatory *per se* as to him (*Colucci v. Chicago Crime Comm'n* (1975), 31 Ill. App. 3d 802, 810-11, 334 N.E.2d 461). Extrinsic facts and circumstances must be pleaded to establish that the publication was defamatory as to him (colloquium), and special damages must be alleged with particularity. (*Colucci*, 31 Ill. App. 3d at 810-11.) In light of *Moore* and *Colucci*, the statement "evidence was mishandled by the Medical Examiner's Office" cannot be said to be defamatory *per se* as to Schaffer. Not only is he not named therein, but the statement does not refer to him or mention toxicologists or the "chief toxicologist," nor does it allude to specific investigations conducted solely by Schaffer. At most, it refers to a group of which Schaffer is a member, the Cook County medical examiner's office. Without more, the statement is not so obviously and naturally harmful to Schaffer that a showing of special damages is unnecessary. *Moore*, 181 Ill. App. 3d 587, 537 N.E.2d 408.

Schaffer, himself, found it impossible to rest his claim on Cummings' editorial alone and was forced to look outside the complete text of the editorial and refer to a series of reports aired nine months earlier, pleading extrinsic facts in paragraph 5 of the complaint to explain how Cummings' statement in fact referred to him. Accordingly, the statement is not actionable *per se* (See *Harris Trust*, 154 Ill. App. 3d at 581; *Richardson v. Dunbar* (1981), 95 Ill. App. 3d 254, 419 N.E.2d 1205.) Schaffer's simple allegation that the editorial was "of and concerning" him is a conclusion and, therefore, insufficient to support an action for defamation *per se*. See *Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, 807-08, 277 N.E.2d 748.

Schaffer nevertheless insists the circuit court had authority to consider the colloquium set out in paragraph 5 in determining whether the statement was defamatory *per se*. He relies on dictum from *Hambric v. Field Enterprises, Inc.* (1964), 46 Ill. App. 2d 355, 359, 196 N.E.2d 489, which suggested that a "prohibition against considering colloquium in ascertaining if an article is libelous *per se* [citation] seems to us to be unduly restrictive and illogical." No other Illinois cases have adopted such rationale; to the contrary, the most recent case to have considered the issue has drawn the opposite conclusion. (*Moore v. Streit*, 181 Ill. App. 3d at 597-98.) As *Moore* explained, "the injurious character of the statement *** cannot be considered so obvious as to justify dispensing with proof of actual damages" where additional explanation is required to establish a person's identification with the pub-

lication. 181 Ill. App. 3d at 598.

The 1985 editorial was not actionable *per se*. Since Schaffer relies on extrinsic facts to establish the defamatory meaning of the editorial as to him, we next consider whether he sufficiently pleaded a cause of action for defamation *per quod*.

## B

■ An action for defamation *per quod* is established where words not defamatory on their face are rendered so by extrinsic facts or innuendo, which must be alleged (*Harris Trust*, 154 Ill. App. 3d at 582), and special damages set forth with particularity. (*Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 266, 371 N.E.2d 874.) General allegations, such as damage to an individual's health or reputation, economic loss, and emotional distress, are insufficient to support an action *per quod* (*Heerey v. Berke*, 188 Ill. App. 3d at 532-33), for example; plaintiff was exposed to "public hatred, contempt and ridicule and tended to deprive *** [plaintiff] of public confidence and injured it in its business reputation" (*Harris Trust*, 154 Ill. App. 3d at 585-86); plaintiff "suffered ill health, emotional distress and damage to his reputation and medical practice" (*von Solbrig Memorial Hospital v. Licata* (1973), 15 Ill. App. 3d 1025, 1028, 305 N.E.2d 252); damage to plaintiff's "good name, reputation and business," exposure to public hatred, obloquy, and constant harassment by the police department, and subjection "to derision, insults and indecent proposals, which cause her to become ill" (*Hambric*, 46 Ill. App. 2d at 357).

■ In the instant case, Schaffer alleges he was disgraced and injured in his profession, and "has suffered extreme emotional distress, has needed to take medication to treat the nervous distress which has resulted from his public humiliation, has incurred medical expenses in relation to his nervous condition, and as a result has been unable to participate in normal activities." In light of the above authority, these allegations must be characterized as descriptive of general damages and insufficient to plead special damages with particularity. *Heerey*, 188 Ill. App. 3d 527, 544 N.E.2d 1037.

Schaffer has not adequately stated a cause of action either for defamation *per se* or *per quod*. Dismissal of count I therefore was proper.

## II

Schaffer next contends that count II of the complaint sufficiently pleaded a cause of action for invasion of privacy by placing him in a false light. Count II reasserted the allegations set forth in count I, then added that Cummings' 1985 editorial, in conjunction with the

1984 Zekman report, invaded Schaffer's privacy by placing him "in the false light of an incompetent mishandler of evidence, derelict in his duty, and unfit to hold his office of Chief Toxicologist in the Medical Examiner's Office." The circuit court also dismissed count II with prejudice.

■ The necessary elements for a false-light invasion of privacy claim were outlined in *Lovgren v. Citizens First National Bank* (1989), 126 Ill. 2d 411, 418, 534 N.E.2d 987, quoting Restatement (Second) of Torts section 652E (1977):

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

Alleged false-light invasion of privacy, although closely related to defamation, protects one's interest in being let alone from offensive publicity. (*Lovgren*, 126 Ill. 2d at 418-19; W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on the Law of Torts §117, at 864 (5th ed. 1984) (Prosser & Keeton).) It has been suggested that all defamation actions can be analyzed as false-light claims, but not all false-light claims support defamation actions (*Lovgren*, 126 Ill. 2d at 421); it is not necessary that a plaintiff be defamed to support a false-light invasion of privacy claim. (Restatement (Second) of Torts §652E, comment *b*, at 395.) Due to the similarities between these torts, certain restrictions and limitations on actions for defamation may be equally pertinent to claims for false-light invasion of privacy. See W. Prosser, *Privacy*, 48 Calif. L. Rev. 383, 400-01 (1960) (*Privacy*).[2]

---

[2]Many of the restrictions on defamation actions have been applied to false-light invasion of privacy claims: the actual malice standard of liability for public (*Time, Inc. v. Hill* (1967), 385 U.S. 374, 17 L. Ed. 2d 456, 87 S. Ct. 534) and private figures (*Lovgren*, 126 Ill. 2d 411); the defenses of opinion (*Cibenko v. Worth Publishers, Inc.* (D.N.J. 1981), 510 F. Supp. 761) and truth (*Rinsley v. Brandt* (10th Cir. 1983), 700 F. 2d 1304); and the statement must be "of and concerning" the individual plaintiff (*Michigan United Conservation Clubs v. CBS News, a Division of CBS, Inc.* (W.D. Mich. 1980), 485 F. Supp. 893, *aff'd* (6th Cir. 1981), 665 F.2d 110). In Illinois, the common law fair report privilege might be applicable under appropriate circumstances (see *Berkos v. National Broadcasting Co.* (1987), 161 Ill. App. 3d 476, 496, 515 N.E.2d 668); also, the statute of limitations is the same for both defamation and privacy actions (Ill. Rev. Stat. 1985, ch. 110, par. 13—201), and the uniform single publication act limitations apply equally to both (Ill. Rev. Stat. 1985, ch. 126, par. 11).

■ Although existing authority is not extensive concerning the applicability of the special damages requirement to false-light actions, we conclude that Schaffer's failure to plead special damages here is fatal to his false-light invasion of privacy claim under the circumstances presented. (*McCabe v. Village Voice, Inc.* (E.D. Pa. 1982), 550 F. Supp. 525, 529 n.9; *Fogel v. Forbes, Inc.* (E.D. Pa. 1980), 500 F. Supp. 1081, 1088; Restatement (Second) of Torts §652E, comment *e*, at 399.) In *Fellows v. National Enquirer, Inc.* (1986), 42 Cal. 3d 234, 251, 721 P.2d 97, 108, 228 Cal. Rptr. 215, 227, the supreme court of California held that, whenever a claim for false-light invasion of privacy was based on language that was defamatory only by reference to extrinsic facts, pleading and proof of special damages were required.[3] In considering the applicability of the special damages requirement to a false-light claim, the *Fellows* court acknowledged the evolution of restrictions and limitations on liability for defamatory speech as courts and legislatures attempted to balance the interest in a person's reputation against the interests in freedom of speech and press. (42 Cal. 3d at 248, 721 P.2d at 106, 228 Cal. Rptr. at 225.) It suggested the requirement of special damages in a *per quod* action represented a legislative determination that the imposition of liability for a publication which afforded no warning of its defamatory nature, and did not cause actual pecuniary injury, placed too great a burden on the editorial process and interfered with the free dissemination of news. (42 Cal. 3d at 249, 721 P.2d at 107, 228 Cal. Rptr. at 226.) The court also recognized that privacy suits threaten the freedoms of speech and press in the same manner as defamation actions. 42 Cal. 3d at 241, 721 P.2d at 101, 228 Cal. Rptr. at 220.

Finding the policy behind the requirement of special damages in a *per quod* action equally applicable to a false-light claim based on a defamatory publication, the *Fellows* court concluded (42 Cal. 3d at 251, 721 P.2d at 108, 228 Cal. Rptr. at 227):

> "Since virtually every published defamation would support an action for false light invasion of privacy, exempting such actions from the requirement of proving special damages would render the statute a nullity. Permitting a plaintiff to circumvent the statutory requirement by labeling the action as one for false light invasion of privacy would defeat the legislative purpose of providing a zone of protection for the operation of a free press."

We find the *Fellows* rationale persuasive.

---

[3]By statute, California requires allegations and proof of special damages for a libel *per quod* claim to be actionable. Cal. Civil Code §45a (Deering 1989).

At common law, one of the purposes of the special damages requirement in a *per quod* action for defamation was to discourage trivial and extortionate claims. (See *Privacy*, 48 Calif. L. Rev. at 401.) Also, as noted in *Fellows*, a requirement of special damages helps protect first amendment interests when the dissemination of news is involved. (43 Cal. 3d at 249, 721 P.2d at 107, 228 Cal. Rptr. at 226.) These significant policies, protected in the law of defamation, are equally implicated where, as here, a false-light action is based upon a defamatory publication.

Accordingly, we hold that a claim for false-light invasion of privacy based on language, the defamatory meaning of which can be established only by reference to extrinsic facts, requires the pleading of special damages with particularity. Schaffer's false-light count here merely realleges the damages set forth in the defamation count, which we previously found insufficient to set forth special damages with particularity. *Cf. Lovgren*, 126 Ill. 2d 411, 534 N.E.2d 987.

For the above reasons, the dismissal of both counts of the complaint must be affirmed.

Affirmed.

DiVITO, P.J., and SCARIANO, J., concur.