In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-4314

ROBERT E. MUZIKOWSKI,

*Plaintiff-Appellant*,

*v.*

PARAMOUNT PICTURES CORPORATION,
SFX TOLLIN ROBBINS INCORPORATED, and
FIREWORKS PICTURES,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6721—**Charles P. Kocoras**, *Chief Judge.*

ARGUED MAY 29, 2002—DECIDED MARCH 6, 2003

Before RIPPLE, DIANE P. WOOD, and EVANS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Robert Muzikowski has devoted years of his life to coaching Little League Baseball teams in economically depressed areas of Chicago—an activity for which he deserves great credit. His commitment eventually attracted national attention, which led to a book about the 1992 season of the league Muzikowski co-founded, and later to a movie produced by defendant Paramount Pictures entitled *Hardball*, which was based on the book. Muzikowski regarded the

movie as defamatory, on the theory that one particular character easily identifiable as himself (played by Keanu Reeves) was portrayed in a negative way, and that this amounted to disseminating falsehoods about him and about his league. The district court granted Paramount's motion to dismiss the complaint. In so doing, however, it relied not only on Illinois substantive law (which was proper), but also on Illinois pleading rules (which was not). We therefore reverse and remand for further proceedings.

**I**

Since 1991, Muzikowski, a licensed securities broker and insurance salesman, has been active in founding and coaching inner-city Little League Baseball programs, including the Near North Little League (NNLL) (centered in Chicago's Cabrini-Green area) and the Near West Little League (NWLL), which Muzikowski founded in 1995 for children living on the near west side. Especially at the time, both these neighborhoods were among Chicago's poorest. Muzikowski and his work have been featured nationally on programs such as ABC's *Nightline*.

In 1991, author Daniel Coyle volunteered to coach with the NNLL. The next season, 1992, Coyle took a leave of absence from his job as an editor at *Outside* magazine so that he could continue his work as an assistant coach of one of Near North's teams and at the same time write a book about the experience. The end result was *Hardball: A Season in the Projects*, which G.P. Putnam's Sons published in 1994. The book, which bills itself as a work of non-fiction, focuses primarily on the children Coyle coached, although it also devotes some attention to the coaches. Prominent among those coaches is Muzikowski; sprinkled throughout the book are passages mentioning Muzikowski and various personal details about

Muzikowski's life. Paramount acquired the motion picture rights to Coyle's book in 1993 and seven years later produced the movie *Hardball*, which tells the story of a coach named Conor O'Neill. No character in the movie is named Robert or Muzikowski and there are no references to Little League Baseball. The credits of *Hardball* state, "While this motion picture is in part inspired by actual events, persons and organizations, this is a fictitious story and no actual persons, events or organizations have been portrayed."

Despite this disclaimer, Muzikowski contends that O'Neill is in fact a portrayal of him. He focuses on numerous facts revealed in Coyle's book about his own life. After his father died, Muzikowski dropped out of college for lack of funds. He later became an alcoholic and illegal drug user. One night Muzikowski was arrested for his involvement in a bar fight, which left a permanent scar on his hand. After being bailed out, Muzikowski began to turn his life around. Later, he became active in Little League. As a coach, Muzikowski drove a blue station wagon, made frequent use of profanity, and sometimes "los[t] it." On one occasion, Muzikowski learned that one of his players had been killed in a gang-related shooting. He later spoke at the boy's funeral.

The O'Neill character in the movie version of *Hardball* experiences almost exactly the same things as the real Muzikowski. The only differences, in Muzikowski's opinion, are unflattering and false as applied to the real man. O'Neill never breaks his drinking habit, while Muzikowski has not taken a drink for 17 years. O'Neill, unlike Muzikowski, scalps tickets and gambles. He commits such crimes as battery, theft, criminal destruction of property, disorderly conduct, and drinking on the public way. From a professional standpoint, O'Neill falsely represents himself as a broker, even though he has no li-

cense. O'Neill uses his father's death to deceive others into giving him money, and he is portrayed as having no interest in children or their well-being in contrast to Muzikowski's deep commitment to young people. In fact, Muzikowski became involved in Little League solely out of that genuine concern for children, while the O'Neill character does so only to pay off a gambling debt.

In the spring of 2000, Paramount announced to the public that it was going to make the movie *Hardball*. It issued press releases and other information describing the movie generally. Around the same time, Muzikowski began getting telephone calls from all over the country from friends and acquaintances telling him that Paramount was about to make a movie about him. Paramount's publicity continued throughout the year; it made it clear that *Hardball* was to be based on Coyle's book and that it was about an inner-city baseball team based on a team located in the Cabrini-Green housing projects. At least one news story about the up-coming film mentioned Muzikowski by name: an October 26, 2000, article prepared by the Associated Press said that Keanu Reeves "plays Bob Muzikowski, a former addict turned devout Christian, who coaches a Little League baseball team." Most of the other advance publicity also emphasized the fact that the movie was based on the true account found in Coyle's book.

Although a preview copy of *Hardball* was released in January 2001, and reviews based on that exhibition were disseminated around the country, the formal date of release was set for September of that year. On May 10, 2001, Muzikowski filed a complaint in the Central District of California invoking the court's diversity jurisdiction and alleging libel and various other claims. Three months later, Muzikowski sought a preliminary injunction to prevent *Hardball*'s release. On August 24 Muzikow-

ski voluntarily dismissed the California action and filed this suit in the Northern District of Illinois, asserting claims of defamation and false light invasion of privacy under Illinois law. Muzikowski also moved for a temporary restraining order to prevent release of the film, which the district court denied. The film thus found its way into the theaters as scheduled. On November 28, 2001, the district court granted Paramount's motion to dismiss based on FED. R. CIV. P. 12(b)(6).

## II

Before we discuss the merits, we must consider an issue of appellate jurisdiction. The district court dismissed Muzikowski's claims without prejudice and "in the usual case, such a dismissal does not qualify as an appealable final judgment because the plaintiff is free to re-file the case." *Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001). An appeal is possible, however, if there is no amendment Muzikowski could reasonably be expected to offer to save the complaint, or if a new suit would be barred by the statute of limitations. *Id.*

We are satisfied that Muzikowski cannot amend and re-file his complaint. In the first place, at this point any new claim would be barred by the statute of limitations. A dismissal without prejudice is treated for statute of limitations purposes as if suit had never been filed. *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000). Illinois imposes a one-year statute of limitations on all defamation actions that begins to run when the defamatory statement was published. *Buechele v. St. Mary's Hosp.*, 509 N.E.2d 744, 745-46 (Ill. App. Ct. 1987). Therefore, any claim Muzikowski may have had expired no later than September 14, 2002, one year after Paramount released *Hardball*.

Furthermore, the district court itself recognized that Muzikowski might be able to amend the complaint in some cases to itemize his damages more specifically, but Muzikowski stated on the record that he wished to forego that opportunity and bring an immediate appeal. This is akin to a voluntary dismissal of his claims. While a party cannot normally bring an appeal after a voluntary dismissal of some claims, see, *e.g.*, *West v. Macht*, 197 F.3d 1185, 1187-88 (7th Cir. 1999), in this case Muzikowski had already voluntarily dismissed his complaint once before in the Central District of California. Therefore, this second dismissal "operates as an adjudication upon the merits." FED. R. CIV. P. 41(a)(1). From that point of view as well, it is a final judgment from which Muzikowski may appeal under 28 U.S.C. § 1291.

We also must address one other procedural issue. Muzikowski is proceeding on appeal *pro se* and purports to represent both himself and the NWLL. However, Muzikowski cannot represent the NWLL because he is not a lawyer. Nor can the NWLL, a non-profit corporation, represent itself *pro se. Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993). Because NWLL has not appeared by counsel, we dismiss it as a party to this appeal. *Mendenhall v. Goldsmith*, 59 F.3d 685, 687 n.1 (7th Cir. 1995).

### III

The parties agree that Illinois law applies to the substance of Muzikowski's claim, and so (to the extent it is pertinent) we will confine our discussion accordingly. A defamatory statement is one that "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992). An Illinois

defamation action may state a claim either for defamation *per se* (statements so harmful to reputation that damages are presumed) or defamation *per quod* (statements requiring extrinsic facts to show their defamatory meaning). *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). The district court found that Muzikowski had not stated a claim for defamation *per se* because the statements Paramount made were reasonably capable of an "innocent construction" or of referring to somebody other than Muzikowski. It dismissed the *per quod* claim because, under FED. R. CIV. P. 9(g) (which applies to a state law defamation case in federal court, *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269-70 (7th Cir. 1983)), Muzikowski had not met the heightened pleading standard for special damages and pecuniary loss.

## A

We begin with the defamation *per se* claim. In a *per se* action, Muzikowski may recover only if Paramount's statements fit into one of the limited categories of statements or imputations that Illinois considers actionable *per se*: (1) commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business. *Bryson*, 672 N.E.2d at 1214-15.

Even if a statement falls into a recognized category, it will not be actionable *per se* if the statement "may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff." *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill. 1982). In Illinois courts, this determination is made by the judge and it is regarded as a question of law. *Anderson*

*v. Vanden Dorpel*, 667 N.E.2d 1296, 1302 (Ill. 1996). Allocation of functions between judge and jury in federal court, however, are a matter of federal law. Moreover, facts beyond those that appear in a federal complaint may be relevant to the reasonableness inquiry, which requires that statements be read in their natural sense, not in the light most favorable to the defendant. *Chapski*, 442 N.E.2d at 197-99. However, if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail. *Anderson*, 667 N.E.2d at 1302.

Paramount provides two reasons why it is reasonable to construe the statements in question as referring to someone other than Muzikowski (namely O'Neill, an entirely fictional character). First, it points to material differences between Muzikowski and O'Neill, which Muzikowski himself identifies in his complaint. Second, it contends that because *Hardball* is a work of fiction, it cannot reasonably be interpreted to refer to Muzikowski.

The second contention is more easily dispensed with and so we turn to it first. "[S]imply because the story is labeled 'fiction' and, therefore, does not purport to describe any real person" does not mean that it may not be defamatory *per se*. *Bryson*, 672 N.E.2d at 1219. In *Bryson*, the plaintiff sued a magazine publisher over an article appearing in its fiction section. The article featured a character who also had the last name of Bryson (but not the plaintiff's first name), and who was described as a "slut." The article was set in southern Illinois, where both the plaintiff and the author of the article resided, and the plaintiff alleged 25 other physical attributes and life experiences she shared with the character. Under these circumstances, the Illinois Supreme Court held that the plaintiff should have the opportunity to prove that the character bore "such a close resemblance to the plaintiff that reasonable persons would understand that

the character was actually intended to portray the plaintiff." *Id.* In light of *Bryson*, the mere fact that Paramount labeled its movie "fictitious" is not enough to shield it from an Illinois defamation action.

Paramount responds that its case is different from *Bryson* because Robert Muzikowski is never referenced by name in *Hardball*, and thus his pleading cannot be construed to support a claim for defamation *per se*. Before the Illinois Supreme Court decided *Bryson,* the Illinois Appellate Court had issued conflicting opinions on this point. Compare *Barry Harlem Corp. v. Kraff*, 652 N.E.2d 1077, 1080 (Ill. App. Ct. 1995) (statement which does not mention plaintiff by name cannot be defamatory *per se* as to her); *Schaffer v. Zekman*, 554 N.E.2d 988, 991-92 (Ill. App. Ct. 1990) (same) with *Aroonsakul v. Shannon*, 664 N.E.2d 1094, 1098 (Ill. App. Ct. 1996) (statement that does not name plaintiff actionable so long as third parties would reasonably understand it to refer to her); *Beresky v. Teschner*, 381 N.E.2d 979, 981 (Ill. App. Ct. 1978) (same). *Bryson* clarified matters to a degree by holding that "where a libelous article *does not name the plaintiff*, it should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the article was about the plaintiff and that the allegedly libelous expression related to her." *Bryson*, 672 N.E.2d at 1218 (emphasis in original). This suggests that there is no automatic ban on recovery if the plaintiff is not named, as *Barry Harlem* and *Schaffer* had held, but that instead that Illinois imposes a heightened pleading standard for complaints basing claims on publications that do not literally name the plaintiff.

That may be the Illinois pleading rule, but it of course does not apply in a federal court. See *Mayer v. Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994). Muzikowski's claim for defamation *per se* does not fall under the special pleading regime of Rule 9, and thus he is entitled to

the usual rules for notice pleading established by Rule 8. Even if Muzikowski's complaint would not have met Illinois's heightened pleading standard, we are satisfied that it was sufficient to put Paramount on notice of his claim. In his complaint, he lists in great detail many similarities between himself and O'Neill that could cause a reasonable person in the community to believe that O'Neill was intended to depict him and that Paramount intended *Hardball*'s mischaracterizations to refer to him.

Notwithstanding those details, Paramount argues that Muzikowski has failed to plead a category of speech that is defamatory *per se*. Muzikowski in response asserts that he fits within two of the five possible categories. First, Muzikowski claims Paramount's portrayal of O'Neill has injured him in his profession or business (number 5). *Id.* at 1215. In *Hardball*, O'Neill is lying when he tells people that he is a licensed securities broker. As a matter of substantive Illinois law, alleging or implying that a person is not a legitimate member of her profession is defamatory *per se*. *Lowe v. Rockford Newspapers, Inc.*, 534 N.E.2d 549, 553 (Ill. App. Ct. 1989) (implication that auto repossessor is really just a car thief). Paramount is correct that some of Muzikowski's other allegations, such as his claim that he will be damaged because the movie asserts that his motives for coaching were pecuniary and not philanthropic, are statements of opinion which do not amount to defamation *per se*. *Owen v. Carr*, 497 N.E.2d 1145, 1148 (Ill. 1986). But the narrow accusation that O'Neill/Muzikowski is an unlicensed broker fits squarely within the *per se* category.

Furthermore, Muzikowski has adequately alleged that Paramount has imputed to him the commission of a crime of moral turpitude (number 1). *Bryson*, 672 N.E.2d at 1214. Such a crime cannot be a mere misdemeanor but must be punishable by imprisonment. *Gardner v. Senior Living Sys., Inc.*, 731 N.E.2d 350, 354 (Ill. App. Ct.

2000). Muzikowski describes numerous crimes that the O'Neill character commits, some of which (such as ticket scalping and drinking on the public way) are not punishable by imprisonment. Some of them, however, are more serious, such as the crime of theft, which has been held to be defamatory *per se. Id.*

In the end, the most serious hurdle Muzikowski faces is the question whether he has in essence pleaded himself out of court, by showing that the federal trier of fact (whether judge or jury) would be compelled to find an innocent construction of the movie. Compare *Chapski*, 442 N.E.2d at 199. Paramount argues that this is the case, and in support of its position it points to a number of differences between the real and the fictional man that are apparent on the face of the complaint. *Hardball* focuses on how O'Neill, a down-and-out gambler, finds redemption by coaching an inner-city baseball league. Muzikowski, in contrast, found redemption long before he became involved in Little League. O'Neill drinks alcohol, while Muzikowski no longer does. O'Neill gambles while Muzikowski does not, and O'Neill begins coaching only to pay for his gambling addiction while Muzikowski co-founded multiple inner-city leagues out of a genuine concern for children.

In our view, Muzikowski might be able to produce evidence showing that there is in fact no *reasonable* interpretation of the movie that would support an innocent construction. He may be able to show that no one could think that anyone but him was meant, and the changes to "his" character, far from supporting an innocent construction that O'Neill is a fictional or different person, only serve to defame him in the ways already discussed. We conclude that Muzikowski's allegations, read in the light most favorable to him, entitle him to the chance to prove his claim under a defamation *per se* theory. As the case develops further, of course, it is entirely possible that

Paramount will be able to produce enough facts to support its "innocent construction" argument. At this stage, however, we believe it was premature to reject Muzikowski's case.

**B**

Muzikowski also urged that his complaint stated a claim for defamation *per quod*. In such an action, Muzikowski could have complained about any statements that caused him actual damage, not just those fitting into the narrow *per se* categories. In his opening brief before this court, however, Muzikowski raises no arguments contesting the district court's dismissal of his defamation *per quod* count and has therefore waived the claim. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Even if we were to overlook this fact, Muzikowski concedes in his reply brief that he did not itemize his losses or plead specific damages of actual financial injury. This is a required element of a *per quod* claim. See Fed. R. Civ. P. 9(g); *Anderson*, 667 N.E.2d at 1303-04. Because Muzikowski did not specifically state his damages, we affirm the judgment for Paramount on the *per quod* claim.

**C**

All that remains is Muzikowski's claim for the tort of false light invasion of privacy. To prevail, Muzikowski must show that the publicity at issue is "of and concerning" him, that it placed him before the public in a false light, and that there was actual malice. *Schaffer*, 554 N.E.2d at 993 & n.2. If the action is based on statements that are not defamatory *per se*, special damages too must be pleaded. *Id.* at 994.

Our analysis of the false light claim tracks our assessment of the claim for defamation *per se*. Muzikowski has not asserted special damages, and so the claim can succeed only on the statements to the effect that O'Neill (and hence, Muzikowski) is a thief and an unlicensed broker. The "of and concerning" requirement is basically the same as the innocent construction rule. *Id.* at 993 n.2. If the statements can reasonably be construed as referring to somebody other than Muzikowski, then they are not "of and concerning him," and cannot state a false light claim. *Harte v. Chicago Council of Lawyers*, 581 N.E.2d 275, 280 (Ill. App. Ct. 1991). On this complaint, however, for the reasons we have already set forth, Muzikowski is entitled to introduce facts showing that these statements cannot reasonably be construed as pertaining to anyone other than himself. Paramount, once again, will be entitled to contest that proposition.

## IV

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*