In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 05-3004 & 05-3005

ROBERT E. MUZIKOWSKI,

*Plaintiff-Appellant,*

*v.*

PARAMOUNT PICTURES CORP.,
SFX TOLLIN/ROBBINS, INC. and
FIREWORKS PICTURES,

*Defendants-Appellees.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6721—**Charles P. Kocoras**, *Judge.*

---

ARGUED MAY 5, 2006—DECIDED FEBRUARY 8, 2007

---

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Robert Muzikowski has devoted years of his life to coaching Little League Baseball teams in economically depressed areas of Chicago. His commitment to this pursuit led to a book about the league he co-founded, and later to a movie produced by defendant Paramount Pictures entitled *Hardball*, which was based on the book. Muzikowski regarded the movie as defamatory and sued Paramount, claiming that one particular character that Muzikowski believed was easily identifiable as himself was portrayed in a negative way, and

that this amounted to disseminating falsehoods about him and about his league.

This is the second time that Muzikowski has asked this court to reverse a judgment in favor of Paramount. See *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918 (7th Cir. 2003) (*Muzikowski I*). After considering his first appeal, we concluded that the district court should not have granted Paramount's motion to dismiss, because the heightened pleading standard that the Illinois courts use does not apply in federal court to a claim of defamation *per se. Id.* at 926. When Muzikowski returned to the district court, he took advantage of his lawsuit's second lease on life to add several new claims. Nevertheless, the district court again rejected his suit and granted summary judgment for Paramount. To top things off, the court sanctioned Muzikowski's lawyers from the law firm Schuyler, Roche & Zwirner (SRZ) for their repeated failure to abide by an order requiring them to identify the documents they planned to use at trial in support of Muzikowski's claims.

Muzikowski now challenges the district court's grant of summary judgment to Paramount on each of his claims. In a separate appeal, SRZ contests the district court's sanctions order. We affirm both of the district court's decisions.

# I

Because the underlying facts of this case are summarized in our earlier decision, we repeat only those facts relevant to the issues raised in this round of appeals.

Since 1991, Muzikowski has been involved in founding and coaching inner-city Little League programs in Chicago. In 1994, author Daniel Coyle, who had served as an assistant coach of a team in a league in which Muzikowski

had been involved, published a work of non-fiction titled *Hardball: A Season in the Projects*. Although this book focused on the children in the baseball league, it also devoted some attention to the coaches, including Muzikowski.

In 1993, Paramount acquired the motion picture rights to the book; several years later, in 2001, it released the *Hardball* film. The film told the story of a Little League coach named Conor O'Neill. Although the movie claimed that it was "a fictitious story and no actual persons, events or organizations have been portrayed," the O'Neill character had many similarities to Muzikowski. Both came from Irish-Catholic working-class backgrounds; both were involved in a bar fight in which they cut their hand; both were jailed as a result; both experienced the death of their father and financial difficulties. Nevertheless, there were also differences between the real Muzikowski and the fictional O'Neill. Some were benign and others painted O'Neill as a far less reputable figure. On the neutral side, there is nothing in the name "Conor O'Neill" that would make one think of "Robert Muzikowski." Also, O'Neill is single with no children, unlike Muzikowski. O'Neill coached only one team, while Muzikowski cofounded and ran more than one league, in addition to coaching his teams. Other differences were more troublesome: unlike Muzikowski, who had a history of alcohol and drug abuse that he successfully overcame, O'Neill was still an alcoholic at the time of the events portrayed in the film; O'Neill was a compulsive gambler; and O'Neill's original motivation for becoming involved in the team was a selfish desire to pay off a gambling debt.

Muzikowski was not flattered by the attention he received because of the film. To the contrary, he was convinced that the movie was a thinly disguised biography of him, although at one point he conceded that no fewer than three characters in the film could be con-

strued to be him. Muzikowski felt that the movie portrayed him in a false and unflattering light, implying wrongly that he (like the O'Neill character) had a drinking problem and that he (like O'Neill) became a Little League coach in order to pay off a gambling debt, rather than out of a desire to help children. Offended and determined to protect his name, Muzikowski sued Paramount for defamation and false light invasion of privacy under Illinois law.

In the initial proceeding before the district court, the court dismissed Muzikowski's complaint under Rule 12(b)(6), concluding that he had failed to state a claim for defamation *per se* under Illinois law because the *Hardball* film was reasonably capable of an "innocent construction," meaning, for this purpose, that it could have been referring to someone other than Muzikowski. We reversed, holding that although the district court acted correctly by applying Illinois substantive law, it improperly held Muzikowski to Illinois's heightened pleading standard rather than the notice pleading requirements of Federal Rule 8. Under the more lenient federal pleading standard, we explained, Muzikowski "might [still] be able to produce evidence showing that there is in fact no *reasonable* interpretation of the movie that would support an innocent construction." *Muzikowski I*, 322 F.3d at 927. We reached the same conclusion concerning Muzikowski's false light invasion of privacy claim, explaining that "[o]ur analysis of the false light claim tracks our assessment of the claim for defamation *per se*." *Id.*

Back in the district court, Muzikowski amended his complaint, adding new defamation counts and theories of false advertising, intentional infliction of emotional distress, and unjust enrichment. This time, the case proceeded to summary judgment. Based on the record presented by the parties' submissions, the district court granted summary judgment to Paramount. The court

also sanctioned Muzikowski's lawyers for their repeated failure to abide by its orders to identify the documents they planned to use at trial to support Muzikowski's claims. It ordered SRZ to pay Paramount $50,915.25. Muzikowski and SRZ have each appealed.

## II

The two primary theories on which Muzikowski relies are defamation *per se* and the branch of the common law tort of invasion of privacy that penalizes portrayal of the plaintiff in a false light. We therefore address those arguments first.

## A

The Supreme Court of Illinois recently summarized the law of defamation in *Tuite v. Corbitt*, 2006 WL 3742112 (Ill. Dec. 21, 2006), as follows:

> A statement is defamatory if it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person. . . . Statements may be considered defamatory *per se* or defamatory *per quod* . . . . A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed. . . . In a defamation *per quod* action, damage to the plaintiff's reputation is not presumed. Rather, the plaintiff must plead and prove special damages to recover. . . .
>
> In Illinois, there are five categories of statements that are defamatory *per se*: (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or

want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication. . . . However, even if a statement falls into one of the categories of words that are defamatory *per se*, it will not be actionable *per se* if it is reasonably capable of an innocent construction. . . .

2006 WL 3742112 at *4-5 (citations omitted). Muzikowski, like the plaintiff in *Tuite*, relies here on the theory of defamation *per se*.

In contrast to a claim of defamation *per quod*, for which a plaintiff is required to show "extrinsic facts . . . to explain [a statement's] defamatory meaning," a plaintiff claiming defamation *per se* is not required to prove damages, since "the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206 (Ill. 1992); see also *Muzikowski I*, 322 F.3d at 924. In order to prove defamation *per se*, a plaintiff must show that her claim fits into one of the five categories summarized in *Tuite, supra.* See also *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214-15 (Ill. 1996). As the state supreme court reaffirmed in *Tuite*, however, even if a statement falls into a recognized *per se* category, it will not be actionable if it "may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff." *Tuite*, 2006 WL 3742112 at *5 (quoting *Chapski v. The Copley Press*, 442 N.E.2d 195, 199 (Ill. 1982)); *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006) (same). Illinois has chosen a difficult standard to meet, as "if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Muzikowski I*, 322 F.3d at 925 (citing *Ander-*

*son v. Vanden Dorpel*, 667 N.E.2d 1296, 1302 (Ill. 1996)). The supreme court has recognized that its version of the innocent construction rule (which applies only to *per se* actions) favors defendants, but it has concluded that "the tougher standard is warranted because damages are presumed in *per se* actions." *Tuite*, 2006 WL 3742112 at *9; *Anderson*, 667 N.E.2d at 1302.

In *Muzikowski I*, we ruled that Muzikowski's complaint adequately alleged (for purposes of FED. R. CIV. P. 8) that the portrayal of O'Neill as an unlicensed securities broker injured Muzikowski professionally (Muzikowski is a licensed securities broker and insurance salesman), and that the portrayal of O'Neill committing crimes such as theft injured Muzikowski's reputation as well. We held that, on remand, Muzikowski had to overcome the innocent construction rule by demonstrating that "no one could think that anyone but him was meant, and the changes to 'his' character, far from supporting an innocent construction that O'Neill is a fictional or different person, only serve to defame him. . . ." *Muzikowski I*, 322 F.3d at 927.

By reversing the district court's grant of Paramount's motion to dismiss, and by noting that "facts beyond those that appear in [Muzikowski's] federal complaint may be relevant to the reasonableness inquiry," *id.* at 924-25, we indicated to the district court that Muzikowski was entitled to proceed with discovery. At the same time, we warned that "the most serious hurdle Muzikowski faces is the question whether he has in essence pleaded himself out of court, by showing that the federal trier of fact (whether judge or jury) would be compelled to find an innocent construction of the movie." *Id.* at 926. We also acknowledged that "[a]s the case develops further, of course, it is entirely possible that Paramount will be able to produce enough facts to support its 'innocent construc-

tion' argument." *Id.* at 927. In short, we left open the possibility that Paramount might prevail at a later stage, depending on how the evidence relevant to the innocent construction rule developed.

Rather than focusing on remand on the evidentiary burden we outlined, Muzikowski instead argued to the district court that our decision definitively resolved in his favor the question whether he had presented sufficient evidence on the innocent construction issue to reach a jury. The district court interpreted our opinion otherwise; it granted Paramount summary judgment on the merits, explaining that "[t]he allegedly defamatory portrayal can be construed as not referring to Muzikowski or to any real person at all. . . . Because the [innocent construction] rule applies, no issues remain for a jury to decide with respect to these claims, and Paramount is entitled to summary judgment."

On appeal, Muzikowski urges this court to find that the law of the case establishes that Paramount cannot take advantage of the innocent construction rule. Unfortunately, however, he has misunderstood our statement (made in the generous procedural setting of review under FED. R. CIV. P. 12(b)(6), which assumes all facts and inferences favorably to the plaintiff) that the similarities between himself and O'Neill "could cause a reasonable person in the community to believe that O'Neill was intended to depict him and that Paramount intended *Hardball*'s mischaracterizations to refer to him." *Muzikowski I*, 322 F.3d at 926. This sentence fragment can be understood properly only in the broader context of our discussion of the question whether Muzikowski's original complaint met Rule 8 notice pleading standards. What we said was this:

> Muzikowski's claim for defamation *per se* does not fall under the special pleading regime of Rule 9, and thus

> he is entitled to the usual rules for notice pleading established by Rule 8. Even if Muzikowski's complaint would not have met Illinois's heightened pleading standard, we are satisfied that it was sufficient to put Paramount on notice of his claim. In his complaint, he lists in great detail many similarities between himself and O'Neill that could cause a reasonable person in the community to believe that O'Neill was intended to depict him and that Paramount intended *Hardball*'s mischaracterizations to refer to him.

*Id.* We went on to hold that in order to reach a jury, Muzikowski first had to show that the innocent construction rule should not apply to Paramount's representation of O'Neill. *Id.*

In *Tuite*, the Supreme Court of Illinois was asked to jettison the innocent construction rule and join the majority of states, but it declined the invitation. Instead, it reaffirmed several important points about the rule. First, it confirmed that the rule must be applied in a contextual, common-sense manner:

> [A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*

*Tuite*, 2006 WL 3742112 at *6, quoting from *Chapski*, 442 N.E.2d at 199. Next, it reiterated that "statements reasonably capable of an innocent construction should be interpreted as nondefamatory," citing *Mittleman v. Witous*, 552 N.E.2d 973, 979 (Ill. 1989). *Tuite*, 2006 WL 3742112 at *6. Finally, following *Bryson*, the court held that "the innocent construction rule does not require courts to

strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." *Id.* at \*7.

Although *Tuite* had not yet been decided when this case was before the district court, the principles it announced were already well established. It was the district court's job to decide whether, in light of the summary judgment record, the statements in *Hardball* could reasonably (*i.e.*, without undue strain) be interpreted innocently or as referring to someone other than Muzikowski. It was predictable that this would be a difficult task for Muzikowski, but it was not a fool's errand. The pleadings indicated that there *are* a great many similarities between the O'Neill character and Muzikowski. As Muzikowski emphasizes, in addition to coaching Little League on the west side of Chicago, both he and O'Neill share Irish descent and working class backgrounds, have at some point gambled on sports and engaged in heavy drinking, have some affiliation with security brokerage firms, and are regulars at a bar named "Duffy's." There are also some important differences between Muzikowski and O'Neill. To be sure, some of those differences portray O'Neill as a disreputable character. For example, unlike Muzikowski, who kicked his drinking habit years before becoming involved with Little League, O'Neill continues to drink throughout the *Hardball* film. While Muzikowski's motives for becoming involved in the league were altruistic, O'Neill began coaching as a means to pay off a gambling debt. Whereas O'Neill is the coach of a single team, Muzikowski "co-founded and ran more than one league in addition to coaching his teams."

If this were all that the record contained, we would be tempted to ask the Supreme Court of Illinois whether liability can be avoided if the only details that distinguish the plaintiff from the character described by the

defendant are themselves defamatory. None of the cases that we have examined present that situation, and we are far from confident that Illinois would adopt a rule under which the more defamatory the movie was, the better the studio's defense would be. See, *e.g.*, *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980); *Springer v. Viking Press*, 90 A.D.2d 315, 457 N.Y.S.2d 246, 250 (N.Y. App. Div. 1982) (Kupferman, J., dissenting). But, as we explained earlier, the record in our case is not so one-sided. Non-defamatory differences were also evident. The two men had different names; one had children and the other did not; and O'Neill was less involved with the Little League program.

The district court concluded that the acknowledged similarities between Muzikowski and O'Neill "demonstrate[d] only that reasonable viewers could see the connection Muzikowski detects between himself and the film's protagonist, not that they must." It was important (though not dispositive) that the character in *Hardball* did not share Muzikowski's name. We acknowledge that certain similarities between Muzikowski and O'Neill are striking enough that, at the summary judgment stage, we must assume that at least some viewers of the film who knew Muzikowski or who had read Coyle's book reasonably concluded that O'Neill's character was based on Muzikowski. On the other hand, the significant differences between O'Neill and Muzikowski could just as easily have led a reasonable viewer who knew about Muzikowski to conclude that O'Neill represented either a composite of the coaches described in Coyle's *Hardball* book (a possibility that Muzikowski recognized in some early court documents he filed) or an amalgam of these real-life figures with a stock Hollywood leading man.

Most jurisdictions do not use an innocent construction rule as favorable to defendants as Illinois's rule is. See David A. Anderson, *Defamation in Fiction: Avoiding*

*Defamation Problems in Fiction*, 51 Brooklyn L. Rev. 383, 393-94 (1985). But it is Illinois law that governs Muzikowski's case, and it is our obligation to apply its law as faithfully as we can. Reviewing the district court's judgment *de novo*, we conclude that the O'Neill character is reasonably susceptible to both innocent and defamatory constructions. Put in the language *Tuite* used, "the statement[s] may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff" and thus they are not actionable *per se*. 2006 WL 3742112 at *6. As a result, Muzikowski cannot prevail on his defamation claim. And since the "of and concerning" requirement of the tort of false light invasion of privacy is "basically the same as the innocent construction rule," *Muzikowski I*, 322 F.3d at 927 (citing *Schaffer v. Zekman*, 554 N.E.2d 988, 993 & n.2 (Ill. App. Ct. 1990)), the district court properly granted Paramount summary judgment on this claim as well.

**B**

The legal theories that Muzikowski added on remand included charges of false advertising and related consumer fraud in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. With respect to the last of these, Muzikowski claimed that Paramount's promotion of the *Hardball* movie as "inspired by a true story" was false because of the extent to which Muzikowski's life story was changed in the film. The district court concluded that these theories failed too, because Muzikowski had neither demonstrated that Paramount's advertisement was false nor that consumers who viewed the advertisements had been deceived.

In order to establish a claim of false or deceptive advertising under § 43(a) of the Lanham Act, a plaintiff must show that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). The district court held, and we have previously assumed without deciding, that this analysis also applies to Illinois false advertising claims. See *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004); *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1206 n.5 (7th Cir. 1990). Because Muzikowski does not argue to the contrary, we assume the same in this case.

In granting summary judgment to Paramount on the false advertising claims, the district court reasoned that Paramount's statement "inspired by a true story" is "literally true," observing that neither party disputes the veracity of the statement. Paramount insists that its advertisement represents the film as "the story of . . . the [Little League] team featured in Coyle's book." Muzikowski, on the other hand, contends that the advertisements "lead viewers to believe that the story is his." Since Muzikowski does not in any event contest the district court's conclusion that Paramount's advertising for *Hardball* did not contain a false statement of fact, we conclude that he has waived both this argument and his false advertising claims generally.

Even if we were to find that Muzikowski had not waived these points, we would sustain the district court's judgment on an alternative basis. In order to show that a substantial segment of *Hardball*'s audience was deceived by Paramount's advertising for the film, Muzikowski presented 18 affidavits from individuals who knew him personally or had personal knowledge of his association with Little League baseball and who, in addition, had seen

the *Hardball* film. These affidavits all stated that "I believed the main character in the movie, Conor O'Neill, . . . was portraying Bob [Muzikowski]" and listed specific reasons for this belief. The district court concluded that, given the size of the movie's audience (the court noted that the film had grossed more than $40 million), the affidavits fell "far short" of proving that a substantial segment of the film's viewers—most of whom presumably did not have the same personal acquaintance with Muzikowski as the affiants—was deceived by Paramount's advertising. Given the fact that this theory requires proof of the impact of the film on a substantial segment of the viewership, we agree with the district court that the 18 affidavits were not enough. Although Muzikowski argues that he was required only to present enough evidence of viewer deception to create a disputed issue of fact, the affidavits constituted the type of "*de minimis* evidence of confusion" we have previously held insufficient to withstand a motion for summary judgment. See *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001).

Muzikowski's remaining claims of intentional infliction of emotional distress and unjust enrichment require little discussion. In order to prove intentional infliction of emotional distress in Illinois, a plaintiff must show that the defendant engaged in "truly extreme and outrageous" conduct. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). The only conduct Muzikowski complains of, however, was Paramount's allegedly false portrayal of him in the *Hardball* film. Even if we were to assume for the sake of argument that O'Neill was a defamatory portrayal of Muzikowski, this portrayal was insufficiently extreme and outrageous to qualify as a tort under Illinois law. See *id.* (holding that "[m]ere insults [and] indignities" do not constitute outrageous conduct). Even O'Neill was redeemed in the end, after all, and the behavior the

movie portrays falls well short of "extreme and outrageous" conduct. Finally, since Paramount obtained the rights to Coyle's book legitimately, as far as this record shows, and it adapted its script from the book, Muzikowski cannot prove that it was unjustly enriched by its use of details about Muzikowski's life in the *Hardball* movie.

## III

Finally, we turn to Muzikowski's lawyers' appeal of the district court's sanctions order. We review a district court's entry of sanctions under FED. R. CIV. P. 37, and the penalty itself, for an abuse of discretion. *In re Thomas Consol. Indus., Inc.*, 456 F.3d 719, 724 (7th Cir. 2006); *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999) ("District courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of the attorneys' fees requested.").

The court sanctioned SRZ for failing to comply in good faith with its order to comply with an interrogatory requiring counsel to identify the documents they planned to rely on at trial to support Muzikowski's claims. Rather than comply with this order, Muzikowski's lawyers identified 14,599 pages of documents that they characterized as "for possible use at trial." When the district court questioned why they had failed to comply, SRZ for mysterious reasons claimed that the court had never issued such an order. The district court found this explanation wholly unsatisfactory, stating that Muzikowski's lawyers "persistence in the unfounded position that the course of action pursued in this case was a reasonable interpretation of express in-court directions constitutes willful disobedience of court orders that we simply cannot countenance."

On appeal, SRZ's only challenge to the entry of sanctions is to repeat the unconvincing argument that

neither Paramount's interrogatory nor the district court's oral and written orders specifically required counsel to identify all documents that they intended to use at trial. Having reviewed the relevant transcripts, we agree with the district court that SRZ's position is entirely unfounded. And even if we were to accept SRZ's version of events, SRZ still fails to explain why it did not fully comply with the district court's order after the court referred the discovery dispute to a magistrate to determine "whether or not there has been good faith compliance . . . on the part of the plaintiff to make a realistic assessment of the documents intended *to be used at trial*." (Emphasis added.) Once the failure to comply was established, Rule 37(b)(2) provides that "the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.) The district court reasonably concluded that there was no justification or excuse here that would have exempted SRZ from the normal rule.

SRZ's challenge to the penalty imposed is no more convincing. Although SRZ contests the reasonableness of the hours expended by Paramount's lawyers reviewing the documents Muzikowski produced, the magistrate judge characterized Paramount's figures as a low-ball estimate, explaining that the figure was "reasonable especially in light of the fact that its attorneys realistically reviewed thousands of pages of documents far in excess of the 14,599 figure [on which the magistrate based the sanctions]." Nor are we convinced by SRZ's contention that the district court erred by basing its sanctions calculation on the hourly rate Paramount's lawyers charged defendants, rather than requiring Paramount to prove "that the rates claimed are *market* rates."

It is well established that "[t]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate.*" People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (quotation marks omitted). Only "[i]f the court is unable to determine the attorney's true billing rate . . . (because he maintains a contingent fee or public interest practice, for example)" should the court "look to the next best evidence—the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation." *Id.* (quotation marks omitted). As far as we can tell, SRZ has never come forth with any evidence to show that the rates charged by Paramount's lawyers are not market rates. The district court therefore did not abuse its discretion by accepting these rates as reasonable.

**IV**

For all these reasons, we AFFIRM the district court's grant of summary judgment to Paramount and AFFIRM the court's issuance of sanctions against SRZ. In so doing, we wish to add that this result is largely driven by the strict approach Illinois takes to the innocent construction rule. It would have been far better if Paramount had not touted *Hardball* as something so closely based on reality, only later to turn around and disclaim any such connection with real people. From all that we can see, Muzikowski provided an important service to the children of Chicago; he did so because he cared about them; and he was understandably frustrated to see the movie portray a much less admirable character.

That said, we note that Paramount has requested this court to order SRZ to reimburse it for the costs and fees it has incurred in connection with the appeal of the sanctions issue. It appears, however, that Paramount has not formally made a motion under FED. R. APP. P. 38 or

otherwise specifying the relief it requests and the grounds on which it relies. We therefore order SRZ to SHOW CAUSE why it should not be ordered to pay the reasonable attorneys' fees Paramount incurred in connection with the sanctions appeal. Its statement is due within 10 days of the date of this opinion.

A true Copy:

      Teste:

 

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*